UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| CENTRIC PIPE LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Ct. No. 25-00182 |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT**

Plaintiff Centric Pipe LLC ("Centric Pipe"), by and through its counsel, alleges as follows:

### I.     PROCEEDING UNDER REVIEW

1.     This action seeks judicial review of certain aspects of the determination of evasion made by U.S. Customs and Border Protection ("CBP"), Office of Trade ("OT"), Trade Remedy & Law Enforcement Directorate ("TRLED") pursuant to 19 U.S.C. § 1517(c) and the de novo administrative review of that determination conducted by CBP, OT, Regulations and Rulings ("ORR") pursuant to 19 U.S.C. § 1517(f) in the Enforce and Protect Act ("EAPA") investigation into Centric Pipe and other U.S. importers of oil country tubular goods ("OCTG"), EAPA Case Number 7890. See Letter from Victoria Cho, Director, Enforcement Operations Division, TRLED, CBP OT re: Notice of Determination as to Evasion (February 24, 2025) (Public Version) ("Final Determination"); Letter from Alice Kippel, Executive Director, ORR, OT, CBP re: Enforce and Protect Act ("EAPA") Consol. Case Number 7890; Certain Oil Country Tubular Goods From the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order, 75 Fed. Reg. 3,203 (Dep't of Commerce Jan. 20, 2010); Certain Oil Country Tubular Goods From the People's Republic of China: Amended Final Determination

of Sales at Less Than Fair Value and Antidumping Duty Order, 75 Fed. Reg. 28,551 (Dep't of Commerce May 21, 2010); 19 U.S.C. § 1517 (July 2, 2025) (Public Version) ("Administrative Review Determination").

## II.     JURISDICTION AND STANDARD OF REVIEW

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c), as Centric Pipe commences this action under Section 517(g)(1) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1517(g)(1).

3. The standard of review, as set forth in Section 517(g)(2) of the Act, 19 U.S.C. § 1517(g)(2), is whether the TRLED and ORR "fully complied with all procedures under {19 U.S.C. §§ 1517(g)(c); (f)}" and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

## III.     STANDING

4. Centric Pipe is the U.S. importer of record of the merchandise subject to TRLED's EAPA determination, as affirmed in ORR's de novo administrative review, and was adversely affected or aggrieved by TRLED's and ORR's actions within the meaning of section 702 of the Administrative Procedure Act, as amended, 5 U.S.C. § 702. Further, as a U.S. importer of record merchandise subject to the affirmative determination of evasion, Centric Pipe may seek judicial review of TRLED's determination and ORR's review of that determination under 19 U.S.C. § 1517(g)(1). Centric Pipe is also an interested party within the meaning of 19 U.S.C. § 1517(a)(6)(A)(i) and 19 C.F.R. § 165.1. Centric Pipe participated in TRLED's EAPA investigation by submitting factual information and written arguments and requested the subsequent de novo administrative review by ORR.

5. Accordingly, Centric Pipe has standing to commence this action pursuant to 19 U.S.C. § 1517(g) and 28 U.S.C. § 2631(i).

## IV.    TIMELINESS OF THIS ACTION

6. On February 24, 2025, TRLED issued its determination of evasion. See Final Determination at 1. On July 2, 2025, ORR issued its de novo administrative review determination. See Administrative Review Determination at 1.

7. Centric Pipe is concurrently filing a summons and complaint to commence this action within 30 business days (excluding six Saturdays, six Sundays and July 4th, a federal holiday) after ORR released its administrative review determination. See id.

8. Centric Pipe's summons and complaint, thus, are timely filed pursuant to 19 U.S.C. § 1517(g)(1) and USCIT R. 3(a)(3) and 6(a).

## V.    STATEMENT OF FACTS

9. On January 18, 2024 and February 1, 2024, the U.S. OCTG Manufacturers Association ("Alleger") filed an EAPA allegation against Centric Pipe and other U.S. importers claiming that these companies evaded the antidumping ("AD") and countervailing ("CVD") duty Orders on OCTG from the People's Republic of China. See Mem. from Kristina Horgan to Victoria Cho re: Initiation of Investigation for EAPA 7890-7898 and 7954 at 2 (Consolidated Case 7890) (Feb. 23, 2024) (Public Version) ("Initiation Mem."). Specifically, the Alleger maintained that Centric Pipe transshipped OCTG through one company in Thailand, Petroleum Equipment (Thailand) Co., Ltd. ("PET"). See id.

10. TRLED will initiate an EAPA investigation where "{t}he information provided in the allegation . . . reasonably suggests that the covered merchandise has been entered for consumption into the customs territory of the United States through evasion." 19 C.F.R. § 165.1

(emphasis added); see also 19 U.S.C. § 1517(b)(1).  TRLED initiated an EAPA investigation finding that the sparce information submitted by the Alleger nonetheless reasonably suggested that Centric Pipe entered merchandise covered by the scope of the AD/CVD Orders on OCTG from China through evasion.  See Initiation Mem. at 2.  In making its determination that the evidence submitted by the Alleger reasonably suggested a finding of evasion, TLRED cited to shipment data showing an increase in exports from PET to the United States between 2021 and 2023 and specious claims by the Alleger in declarations that PET lacked the production capacity to produce OCTG at the level that it exported to the United States.  See id. at 3-4.  For instance, instead of supplying actual production information pertaining to PET facilities, the Alleger submitted a declaration stating that the declarant observed "no movement in or out of {PET}'s facility and no employees."  See id. at 7.  Further, TRLED found that PET received a certification from the American Petroleum Institute ("API") on August 5, 2022, but that license was deactivated on February 1, 2023.  See id.  Again, instead of actual evidence, TRLED relied on hearsay in a declaration that PET deactivated its license when API certifiers tried to perform an on-site audit of PET.  See id.  Finally, TRLED found that Centric Pipe relied on shipment data allegedly showing that Centric Pipe imported "seamless steel casing" or "seamless steel tubing" under HTS 7304.29 from PET and such merchandise met the scope of the AD/CVD orders on OCTG from China.  See id. at 8.  TRLED concluded that this mere scintilla of evidence, indeed primarily relying on second-hand accounts in declarations, reasonably suggested that "PET does not have production in Thailand but instead transshipped Chinese-origin OCTG to Centric {Pipe} . . . ."  Id. at 10.

11. On May 31, 2024, TRLED imposed interim measures against Centric Pipe based on TRLED's conclusion that there is "reasonable suspicion that {Centric Pipe} entered merchandise covered by the AD/CVD orders into the customs territory of the United States through

4

evasion." Letter from Victoria Cho, Director, Enforcement Operations Division, TRLED, CBP OT re: Notice of Initiation of Investigation and Interim Measures - EAPA Cons. Case 7890 at 2 (May 31, 2024) (Public Version) (emphasis added) ("Notice of Int. Measures"); see also 19 U.S.C. § 1517(e) (noting that CBP will impose interim measures "if there is a reasonable suspicion that such covered merchandise was entered into the customs territory of the United States through evasion"). TRLED's investigation covered entries that "entered for consumption, or withdrawn from warehouse for consumption, from February 1, 2023, through the pendency of {TRLED}'s investigation." Notice of Int. Measures at 2.

12. In determining whether to impose interim measures, TRLED examined whether there was reasonable suspicion that Centric Pipe made a material false statement or act, or material omission, that resulted in the reduction or avoidance of applicable cash deposits and/or AD/CVD duties. See id. at 7-9; see also 19 U.S.C. § 1517(a)(5)(A) (defining evasion as "entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise").

13. After initiating the investigation, TRLED issued Form 28 (CF-28) requests for information to the U.S. importers including Centric Pipe. Centric Pipe submitted a response to the CF-28 providing "the entries' purchaser order, commercial invoice, and the importer's proof of payment." Notice of Int. Measures at 17. TRLED found that these entry documents showed that Centric Pipe imported "'seamless steel tubing' that was 'API 5CT'." Id. at 18. TRLED stated that the U.S. International Trade Commission ("ITC") had previously stated that the "{U.S.

5

Department of Commerce ("Commerce")} determined that the seamless unfinished OCTG is within the scope of the ADD and CVD orders'" and that API 5CT was an OCTG specification." Id. Finally, TRLED found that these entry documents corroborated other record evidence contributing to a reasonable suspicion that PET exported Chinese-origin OCTG to the United States. See id. at 19. Relying on this statement from the ITC concerning Commerce's prior interpretations of the scope, and without seeking a formal scope ruling from Commerce, TRLED determined that Centric Pipe "entered merchandise considered OCTG under the scope of the AD/CVD orders." Id. at 18.

14.   Centric Pipe also submitted "equipment descriptions, mill certificates, and production records" for PET. Id. at 19. TRLED determined that Centric Pipe did not provide certain requested documentation pertaining to PET's importation of raw materials. See id. Further, TRLED dismissed the validity of the mill test certificates submitted by Centric Pipe based on its finding that the vast majority of the fields in Centric Pipe's mill certificates matched the information in certain mill certificates submitted by another company and that only certain fields were changed in Centric Pipe's certificates. See id. at 24-26. Ignoring industry standards and without citing to any support for this conclusion, TRLED found that "{i}t is not possible for two separate mill test certificates on separate raw materials to replicate the exact same chemical compositions and mechanical and metallurgical properties." Id. at 26. TRLED then leapt to the conclusion that these mill certificates were changed to give the impression that PET received additional shipments of raw materials. See id. TRLED concluded that these mill certificates constituted a material false statement or act, or material omission leading to a reasonable suspicion that PET transshipped Chinese-origin OCTG to Centric Pipe. See id.

6

15. Following the initiation of its investigation, TRLED issued initial and supplemental requests for information that both PET and Centric Pipe responded to in a timely manner. See Final Determination at 5; see also Administrative Review Determination at 5 (noting that TRLED issued supplemental requests for information to both PET and Centric Pipe). CBP conducted verification of PET's facilities in Thailand between October 29, 2024, to November 1, 2024. See Final Determination at 6.

16. Between December 2024 and January 2025, Centric Pipe submitted written arguments and responses to written arguments by the Alleger to TRLED. See id. at 6. Centric Pipe argued that the allegations underlying the investigation were based on either false or hearsay statements and, thus, there was insufficient evidence of a reasonable suggestion of evasion. See id. at 40, n. 384. Centric Pipe further asserted that TRLED made various false assumptions during verification as TRLED ignored the fact that PET's factory was not regularly running due to a decrease in customer orders that occurred after the initiation of the EAPA investigation. In response to arguments by the Alleger, Centric Pipe maintained that PET cooperated with TRLED's investigation to the best of its ability.

17. On February 24, 2024, TRLED released its determination that the record contained substantial evidence that Centric Pipe imported OCTG from China into the United by transshipment through Thailand without declaring that the merchandise was subject to the AD/CVD Orders on OCTG from China. See id. at 2; see also 19 U.S.C. § 1517(c)(1)(A) (requiring "substantial evidence" to make an affirmative determination of evasion).

18. In reaching its affirmative determination of evasion, TRLED rejected Centric Pipe's arguments that it should never have initiated this investigation as the declarations from the Alleger contained false statements. See id. at 41, n. 393. TRLED instead found that the declarants

made their statements under penalty of perjury, and these statements were consistent with other record evidence. See id.

19. In determining that Centric Pipe's imports fell under the scope of the AD/CVD Orders on OCTG from China, TRLED stated that PET reported that its OCTG production in Thailand began from either hollow steel billets from China or from solid round billets. See id. at 20. TRLED found that hollow steel billets are within the scope of the AD/CVD Orders on OCTG from China because they are a steel product of circular cross-section that are hollow in the middle, and because they do not meet any of the exclusion criteria listed in the scope. See id. at 20. TRLED also found that PET's production in Thailand using hollow steel billets or solid round billets did not substantially transform the products such that the country of origin of the merchandise covered by the scope of the AD/CVD Orders changed. See id. at 21-22. CBP additionally found that PET made certain misrepresentations regarding its production process. Id. at 22-25. TRLED concluded that "substantial evidence exists that PET's hollow steel billets from China are Chinese-origin OCTG covered by the *AD/CVD Orders*," and that "the record does not contain any reliable evidence indicating which OCTG began from solid round billets." Id. at 26.

20. As stated above, a finding of evasion requires that a party must have made a material false statement or act or material omission when entering merchandise into the United States. See 19 U.S.C. § 1517(a)(5)(A). TRLED concluded that PET had made various false statements to CBP without considering other reasonable explanations for these statements. For example, TRLED concluded that PET was attempting to deceive CBP by telling some of its workers not to speak with CBP during verification instead of considering other reasonable explanations such as language barriers. See Final Determination at 24. Similarly, TRLED continued to find that PET submitted documentation, specifically mill certificates, designed to

show that PET received more raw material shipments than it did merely because these forms shared similar fields with other forms and contained other alleged discrepancies that could be easily explained by minor recording errors. See id. Ignoring the decreased production at PET due to the EAPA investigation and other contrary evidence presented prior to verification, TRLED concluded that PET did not perform all the production steps that it claimed. See id. at 21. TRLED reasoned that PET consumed low amounts of electricity compared to the machinery that PET reported as necessary to transform the hollow steel and solid round billets into OCTG. See id. at 25.

21. Based on the above alleged false statements and other alleged omissions, TRLED found that PET failed to cooperate to the best of its ability with CBP's requests for information. See id. at 38. TRLED, ignoring language included in Centric Pipe's contracts with PET, concluded based on an adverse inference under 19 C.F.R. § 165.6(a) that all the OCTG exported by PET to the United States during the POI was Chinese-origin. See generally id. at 25-26; see also id. at 39. TRLED clarified that although it was applying an adverse inference, in the alternative, there was substantial evidence that that PET engaged in evasion without such an inference. See id. at 39.

22. Importantly, TRLED did not apply an adverse inference against Centric Pipe. See id. at 40; see also id. at 61. In rejecting the written arguments by U.S. importers that they acted with reasonable care, TRLED determined that an importer "may make a material false statement with reference to objective facts and regardless of whether one had any state of mind, knowledge, or culpability concerning those facts." Id. at 54. TRLED concluded that an importer "need not be culpable or have knowledge" that they made a material false statement and that Centric Pipe and other importers made such false statements when "they declared that the country of origin of the OCTG they entered from . . . PET . . . was Thailand." Id. at 54-55.

9

23. On April 14, 2025, Centric Pipe submitted a timely request for administrative review contesting TRLED's determination of evasion to ORR. See Letter on Behalf of Centric Pipe, LLC to U.S. Customs and Border Protection re: Revised Request for Administrative Review (April 14, 2025) (Public Version).

24. Centric Pipe argued that TRLED should never have initiated the investigation because the allegation contained unsubstantiated, false statements. See id. at 5-8. Centric Pipe further maintained that the goods it imported "are not covered merchandise" because (1) hollow steel billets and solid round billets are not OCTG covered by the scope of the AD/CVD Orders and (2) hollow steel billets and solid round billets were substantially transformed into OCTG in Thailand. Id. at 8-14. Further, Centric Pipe maintained that TRLED failed to fully consider that PET purchased steel billets from India, Thailand, and other countries and instead simply discussed this fact to call into question the legitimacy of PET's documentation. See id. at 10. Centric Pipe also asserted that CBP should have referred questions regarding scope to Commerce because it is best situated to make such determinations. Id. at 14. Concerning TRLED's factual finding that the record contained substantial evidence of evasion, Centric Pipe asserted that TRLED failed to give due weight to PET's decreased production as a result of the EAPA case and failed to request clarifying information from Centric Pipe and other U.S. importers after verification. See id. at 15-22. Centric Pipe argued that substantial evidence demonstrated that PET had an operating facility and the necessary production capacity to account for the quantities of OCTG shipped to U.S. importers. See id. at 6. In particular, Centric Pipe referenced an assessment by API in its 2023 Audit Report that "{PET} has production capabilities to produce API 5CT and API 5L products within the scope including with appropriate work environment, production facilities and competent personnel in-place." Id. Further, Centric Pipe noted that multiple importers submitted photographs

10

and videos of PET's facility.  See id.  Finally, pertaining to TRLED's application of an adverse inference against PET, Centric Pipe emphasized that TRLED made no finding that Centric Pipe did not cooperate to the best of its ability throughout the investigation.  See id. at 23-24.

25. On July 2, 2025, ORR affirmed TRLED's finding that substantial evidence on the record demonstrated that Centric Pipe entered OCTG through evasion.  See Administrative Review Determination at 18.  ORR, despite not citing to a single example of Centric Pipe failing to cooperate with TRLED's investigation, determined that Centric Pipe entered merchandise by means of false statements and omissions by entering OCTG into the United States "on type "01" consumption entries instead of on type "03" AD/CVD entries and omitting the relevant AD/CVD case numbers from the entry summary documentation."  Id. at 24.  ORR determined that these alleged false statements and omissions were material because Centric Pipe did not pay the applicable cash deposits and AD/CVDs.  See id. at 24-25.

26. ORR rejected Centric Pipe's arguments in its determination upon review, finding, among other things, that substantial evidence supported CBP's determinations that (1) hollow steel billets from China that PET used to manufacture finished OCTG in Thailand are subject merchandise under the AD/CVD Orders and PET's operations in Thailand did not render the products out-of-scope; and (2) PET did not have the production capability and capacity to manufacture finished OCTG in Thailand and transshipped finished OCTG from China through Thailand, which was then imported to the United States by Centric Pipe and others.  See Administrative Review Determination at 18-26.  ORR also found that it was not required to refer these issues to Commerce because in this case, the plain scope language was clear and CBP can "review the language of the AD/CVD Orders, analyze the nature of the merchandise, and reach an

independent conclusion as to whether the merchandise at issue constituted covered merchandise." Id. at 26-27.

27.  ORR also concurred with TRLED's finding that there "was substantial evidence on the record that PET lacked both the production capability and capacity to manufacture finished OCTG in Thailand." See id. at 20. Like TRLED, ORR ignored the impact of the EAPA investigation on PET's volume of orders. See id. at 21.

28.  Finally, ORR dismissed Centric Pipe's assertion that the EAPA statute requires intent or culpability by a U.S. importer. See id. at 26. Instead, ORR concluded that statute imposes a "strict liability interpretation of the definition of evasion." Id.

## VI.    STATEMENT OF THE CLAIMS

### COUNT I

29.  Centric Pipe herein incorporates by reference paragraphs 1 to 28, supra, of this Complaint.

30.  TRLED's determination, as affirmed by ORR's de novo review, to initiate this EAPA investigation was arbitrary, capricious, an abuse of discretion and was otherwise not in accordance with law because the allegation did not reasonably support the finding of evasion by consisting of false or otherwise unsubstantiated statements.

### COUNT II

31.  Centric Pipe herein incorporates by reference paragraphs 1 to 30, supra, of this Complaint.

32.  TRLED failed to consider record evidence that hollow steel billets are not covered by the scope of the AD/CVD Orders on OCTG from China. TRLED's determination that hollow steel billets imported from China fall within the scope of the AD/CVD Order, as affirmed by ORR's

12

de novo administrative review, was therefore, arbitrary, capricious, an abuse of discretion and was otherwise not in accordance with law.

## COUNT III

33. Centric Pipe herein incorporates by reference paragraphs 1 to 32, supra, of this Complaint.

34. TRLED and ORR's failure to consider record evidence that solid round billets, are not covered by the scope of the AD/CVD Orders on OCTG from China was arbitrary, capricious, an abuse of discretion and was otherwise not in accordance with law.

## COUNT IV

35. Centric Pipe herein incorporates by reference paragraphs 1 to 34, supra, of this Complaint.

36. The production process performed at PET's facility in Thailand substantially transformed the hollow billets from China and solid steel billets into finished pipe, thereby changing the country of origin of the OCTG. TRLED's failure to consider this evidence, as affirmed by ORR's de novo administrative review, and TRLED's determination that all of the OCTG exported by PET to the United States, including OCTG imported by Centric Pipe, was Chinese origin, was arbitrary, capricious, an abuse of discretion and was otherwise not in accordance with law.

## COUNT V

37. Centric Pipe herein incorporates by reference paragraphs 1 to 36, supra, of this Complaint.

38. Pursuant to 19 C.F.R. § 165.16(a), "{a} referral {to Commerce} is required if at any point after receipt of an allegation, CBP cannot determine whether the merchandise described

13

in an allegation is properly within the scope of an antidumping or countervailing duty order." Because Commerce created the scope of the AD/CVD Orders on OCTG from China, Commerce is best situated to make determinations as to the scope, particularly given the complicated nature of the products at issue. TRLED's failed to comply with all of its procedures by not referring questions relating to scope in this case to Commerce thereby rendered its affirmative determination of evasion as arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law.

## COUNT VI

39. Centric Pipe herein incorporates by reference paragraphs 1 to 38, supra, of this Complaint.

40. TRLED's determination, as affirmed by ORR's de novo administrative review, that substantial evidence of evasion existed for Centric Pipe was arbitrary, capricious, an abuse of discretion, and was otherwise not in accordance with law given that the record lacked substantial evidence of evasion where TRLED made various false assumptions during verification; TRLED incorrectly rejected material evidence, such as Centric Pipe's own contractual language, that PET purchased steel billets from other countries besides China; and TRLED wrongly concluded, despite significant evidence to the contrary including a third-party API report, that PET lacked the necessary production capacity to account for the quantities of its OCTG shipments to the United States.

## COUNT VII

41. Centric Pipe herein incorporates by reference paragraphs 1 to 40, supra, of this Complaint.

42. TRLED's determination, as affirmed by ORR's de novo administrative review, that substantial evidence of evasion existed for Centric Pipe was arbitrary, capricious, an abuse of discretion and was otherwise not in accordance with law as TRLED made no finding that Centric Pipe made a material false statement or act, or material omission. ORR's determination that Centric Pipe made a material false statement or act by entering OCTG without paying the AD/CVD duties was arbitrary, capricious, an abuse of discretion and was otherwise not in accordance with law as Centric Pipe lacked culpability as it acted with reasonable care in determining that its merchandise was not subject to AD/CVD duties and such actions are insufficient to constitute a material false statement or act to constitute substantial evidence of evasion.

## COUNT VIII

43. Centric Pipe herein incorporates by reference paragraphs 1 to 42, supra, of this Complaint.

44. TRLED's determination, as affirmed by ORR's de novo administrative review, that substantial evidence of evasion existed for Centric Pipe was arbitrary, capricious, an abuse of discretion and was otherwise not in accordance with law as TRLED unlawfully applied an adverse inference against PET, and as a result indirectly applied an adverse inference against Centric Pipe, when Centric Pipe cooperated to the best of its ability with TRLED's investigation.

### VII.    DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, Centric Pipe respectfully prays that this Court:

(1) find that TRLED's determination of evasion against Centric Pipe, as affirmed by ORR's de novo administrative review, as described in Counts I to VIII, was arbitrary, capricious, an abuse of discretion and was otherwise not in accordance with law;

(2) declare that the record lacked substantial evidence of evasion;

(3) remand this matter to TRLED for disposition consistent with the Court's final opinion and order;

(4) order CBP to issue corrected instructions and liquidate Centric Pipe's entries of OCTG imported from PET in Thailand without AD/CVD duties;

(5) provide such other relief as this honorable Court deems proper.

| | |
|---|---|
| Dated: <u>August 14, 2025</u> | /s/ Bryan P. Cenko<br>Bryan P. Cenko<br>Kristin H. Mowry<br>Jeffrey S. Grimson<br>Kavita Mohan<br>Yixin (Cleo) Li<br>Evan P. Drake*<br>Mowry & Grimson, PLLC<br>5335 Wisconsin Avenue, NW, Suite 810<br>Washington, DC 20015<br>202-688-3610 (ph)<br>202-595-8968 (fax)<br>trade@mowrygrimson.com<br>*Counsel to Centric Pipe LLC*<br><br>*\*Admitted to New York bar; Practice supervised by members of the D.C. bar and limited to federal international trade matters pursuant to D.C. Bar Rule 49(c)(2)* |