## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| CENTRIC PIPE LLC,<br><br>*Plaintiff,*<br><br>*and*<br><br>LE COMMODITIES, LLC, TREK METALS, INC., ENERGY PIPE & EQUIPMENT RENTALS, LLC, *and* KANA ENERGY SERVICES, INC.,<br><br>*Consolidated Plaintiffs,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>*and*<br><br>U.S. OCTG MANUFACTURERS ASSOCIATION,<br><br>*Defendant-Intervenor.* | **Consol. Court No. 25-00182** |

## REPLY IN OPPOSITION TO MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

The U.S. OCTG Manufacturers Association ("USOMA" or "Defendant-Intervenor") respectfully submits to this Court its opposition to the motion for leave to file amended complaints made on December 15, 2025 by the five consolidated plaintiffs (the "Consolidated Plaintiffs" or "Plaintiffs") in this consolidated action. *See Motion For Leave To File Amended Complaints*, ECF No. 33 (the "*Motion*"); *see also* ECF No. 37 (paperless order extending the deadline for responses to the *Motion*

to January 12, 2026). For the reasons set out below—and the reasons set out in the Defendant's response that is also being filed today, which are supported by Defendant-Intervenor—this Court should deny the Consolidated Plaintiffs' motion to amend as futile.

## I.     This Court Does Not Allow Amendments to Pleadings that Will Not Survive a Motion to Dismiss

In their December 15th motion, Consolidated Plaintiffs seek to add two counts to their respective complaints, seeking now to challenge 1) U.S. Customs and Border Protection's ("CBP") initiation of the Enforce and Protect Act ("EAPA") investigations here being challenged by Consolidated Plaintiffs as untimely, and 2) the interim measures imposed by CBP during those EAPA investigations as a violation of Plaintiffs' due process rights under the Fifth Amendment of the Constitution. *See Motion*, ECF No. 33 at 3-4. Consolidated Plaintiffs state that their desire to now amend their complaints arises from similar challenges addressed in this Court's recent opinion in *Superior Commercial Sols., LLC v. United States*, CIT No. 24-052, Slip. Op. 25-147, 2025 (Nov. 26, 2025). *See* ECF No. 33 at 2. As their motion to amend their complaints comes more than 21 days after the service of their complaints, Consolidated Plaintiffs necessarily make their motion under Rule 15(a)(2) of this Court. *Id.* at 1.

Rule 15(a)(2) places amendments of complaints and other pleadings at the discretion of the Court, directing that the Court "should freely give leave {to amend} when justice so requires." USCIT Rule 15(a)(2); *see also, e.g., Jinxiang Huameng*

2

*Imp & Exp Co. v. United States*, 227 F. Supp. 3d 1316, 1320 (Ct. Int'l Trade 2017)

("{g}ranting a litigant leave to amend a complaint lies within the discretion of the

court."). However, there are a number of situations in which justice *does not* require

that the Court allow amendment,

> such as undue delay, bad faith or dilatory motive on the
> part of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment,
> futility of amendment, etc....

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962); *see*

*also Jinxiang Huameng*, 227 F. Supp. 3d at 1320 (quoting *Foman* on these

limitations as applicable to CIT Rule 15(a)(2) amendments).

The "futility of amendment" exception recognized in *Foman* is a common-

sense recognition that justice does not require that the Court go through a fatuous

process of allowing an amendment to a complaint, only to then need to turn around

and dismiss that amendment when a motion to dismiss the claim is brought by

another party. The Court can more effectively deal with such unviable amendments

by simply disallowing the motion to amend in the first place.

As this Court has more specifically explained, "{i}f an amendment would not

survive a motion to dismiss pursuant to USCIT Rule 12(b)(6), it is deemed futile."

*United States v. Am. Cas. Co. of Reading Pennsylvania*, 91 F. Supp. 3d 1324, 1334

(Ct. Int'l Trade 2015), as amended (Aug. 26, 2015); *see also Under the Weather, LLC*

*v. United States*, 775 F. Supp. 3d 1373, 1377 (Ct. Int'l Trade 2025) (same); *Taylor*

*Consultants, Inc. v. United States*, 90 Fed. Cl. 531, 546 (2009) (holding that under

guidance from the Court of Appeals for the Federal Circuit (the "CAFC"), an amendment to a complaint is futile if it would not survive a Rule 12(b) motion to dismiss, and so leave to amend "should not be granted").

Under Rule (12)(b), "a litigant may seek to have any or all claims for relief dismissed on the basis that subject matter jurisdiction is lacking." *Barnes v. United States*, 797 F. Supp. 3d 1379, 1382 (Ct. Int'l Trade 2025). Rule 12(b) also allows the dismissal of claims for other defects, including "failure to state a claim upon which relief can be granted." USCIT Rule 12(b)(6). The failure to state a claim upon which relief can be granted can include claims that are barred under 28 U.S.C. § 2637(d)'s requirement of the exhaustion of administrative remedies. *See, e.g.*, *Zhongce Rubber Grp. Co. Ltd. v. United States*, 352 F. Supp. 3d 1276, 1279 (Ct. Int'l Trade 2018), *aff'd*, 787 F. App'x 756 (Fed. Cir. 2019) (dismissing a complaint under Rule 12(b)(6) for a failure to exhaust administrative remedies).

As explained below, the two additional counts Consolidated Plaintiffs seek to add to their complaints through their Rule 15(a)(2) motion here would be futile for multiple reasons. First, for both counts, all Plaintiffs fail to show that they meet standing requirements to have this Court hear those challenges. Plaintiffs lack both Constitutional and prudential standing, and so these counts would need to be dismissed when Rule 12(b) motions are brought, both for a lack of jurisdiction and for a failure to state a claim upon which relief can be granted. Additionally, Consolidated Plaintiffs failed to exhaust their administrative remedies by first

presenting these claims to the agency before seeking to have this Court review them. While Consolidated Plaintiffs seek to excuse their failure to exhaust their administrative remedies as permissible under the practice of this Court, an examination of the issues shows that these new claims do not fall under the narrow exemptions this Court has established to exhaustion requirements. So even if these Plaintiffs had standing to bring these claims, this Court would still dismiss them through a Rule 12(b)(6) motion. As the amendments Consolidated Plaintiffs seek to make to their complaints would not survive a motion to dismiss for multiple reasons, the Court should disallow those amendments as futile.

## II.    The Proposed Amendments Would Be Dismissed for Lack of Standing and Failure to State a Claim upon Which Relief Could be Granted as the New Counts Relate to No Legally Recognizable Injury

### A.  *Article III and prudential standing are indispensable elements in bringing a claim*

This Court is an Article III court, and so its ability to act is bound by the strictures of Article III of the Constitution. Those bounds particularly include Article III's "limit{ of} the judicial power of the United States to the resolution of 'Cases' and 'Controversies,'" a limitation implemented through the requirement of "Article III standing." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597, 127 S. Ct. 2553, 2562, 168 L. Ed. 2d 424 (2007). Indeed, "{n}o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. The concept of standing is part of this limitation." *Simon v. E.*

*Kentucky Welfare Rts. Org.*, 426 U.S. 26, 37, 96 S. Ct. 1917, 1924, 48 L. Ed. 2d 450 (1976) (citation omitted). The existence of that standing cannot be assumed, as "{t}he U.S. Court of International Trade, like all federal courts, is one of limited jurisdiction and is 'presumed to be without jurisdiction unless the contrary appears affirmatively from the record.'" *Milecrest Corp. v. United States*, 264 F. Supp. 3d 1353, 1362 (Ct. Int'l Trade 2017) (quoting *DaimlerChrysler Corp. v. United States*, 442 F.3d 1313, 1318 (Fed. Cir. 2006)).

The central object in Article III standing has been explained to require that the plaintiff must show "such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975) (quotation marks removed). To show that stake, the plaintiff must demonstrate 1) a "concrete and particularized injury;" 2) that this injury "is fairly traceable to the defendant;" and 3) "that a favorable decision will likely redress that injury." *Massachusetts v. E.P.A.*, 549 U.S. 497, 498, 127 S. Ct. 1438, 1441, 167 L. Ed. 2d 248 (2007); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

"To invoke the jurisdiction of a federal court, a party must meet the case or controversy requirements of Article III of the Constitution." *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1271 (Ct. Int'l Trade 2019), modified, 476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020). Therefore, "regardless of a statutory

grant of jurisdiction, a federal court must dismiss as non-justiciable any claim that fails to meet Article III criteria." *Rebar Trade Action Coal. v. United States*, 398 F. Supp. 3d 1359, 1365 (Ct. Int'l Trade 2019). A complaint that fails to show Article III standing will not survive a motion to dismiss under Rule 12(b). *Barnes*, 797 F. Supp. 3d at 1382-833.

Moreover,

> {i}n addition to the constitutional requirements of standing under Article III, courts have adopted an additional standing requirement, sometimes referred to in decisions as the prudential standing requirement, but that the Supreme Court has clarified is simply a statutory "zone of interests" analysis.

*Invenergy*, 422 F. Supp. 3d at 1275; *see also Kowalski v. Tesmer*, 543 U.S. 125, 128–29, 125 S. Ct. 564, 567, 160 L. Ed. 2d 519 (2004) ("The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise") (quotation marks omitted). "The purpose of this analysis is to limit parties who may sue under statutorily granted causes of action to those who have actually been injured." *Invenergy*, 422 F. Supp. 3d at 1275.

This standing requirement represents "*inter alia*, the general prohibition on a litigant's raising another person's legal rights." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 2, 124 S. Ct. 2301, 2304, 159 L. Ed. 2d 98 (2004); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 S. Ct. 1377, 188 L. Ed. 2d 392 (2014) (quoting *Elk Grove*); *Starr Int'l Co., Inc. v. United States*,

856 F.3d 953, 964–65 (Fed. Cir. 2017) ("For a party to have standing, it must satisfy constitutional requirements and also demonstrate that it is not raising a third party's legal rights."). It further recognizes that "the third-party right-holder may not in fact wish to assert the claim in question," and so "'limits{s} access to the federal courts to those litigants best suited to assert a particular claim.'" *Starr*, 856 F.3d at 965 (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S. Ct. 1601, 60 L.Ed.2d 66 (1979)); *see also Kowalski*, 543 U.S. at 129, 125 S. Ct. at 567 ("This rule assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation."). So even "{a}ssuming a litigant… has constitutional standing, *i.e.*, injury in fact, a court may nonetheless deny standing if the litigant seeks to vindicate not its own legal right or interest, but instead the legal rights or interests of a third party." *N. Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313, 1333 (Ct. Int'l Trade 2021), *aff'd sub nom. California Steel Indus., Inc. v. United States*, 48 F.4th 1336 (Fed. Cir. 2022).

The prudential standing/zone of interests requirement "denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399, 107 S. Ct. 750, 757, 93 L. Ed. 2d 757 (1987); *see also Lexmark*, 572 U.S. at 130, 134 S. Ct. at 1389 (explaining that "prudential standing" is appropriately

determined through the zone of interests tests, but the purpose is still to disallow claims from plaintiffs whose "interests are so marginally related to or inconsistent with the purposes implicit in the statute"). Thus, "a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Lexmark*, 572 U.S. at 132, 134 S. Ct. at 1390.

As this Court has explained, "{i}n determining whether a plaintiff's interests fall within the zone of interests of a relevant statute," the Court looks to the interests protected "by the statutory provision at issue," and then examines if "the plaintiff's interests affected by the agency action in question are among those." *Seafood Exporters Ass'n of India v. United States*, 31 C.I.T. 366, 382–83 (2007).

As set out in the two sections below, the two new counts the Consolidated Plaintiffs seek to add to their complaints fail to meet the requirements of Article III and prudential standing, as well as for stating a claim upon which relief can be granted. As this Court has recognized in other cases addressing claims parallel to those Consolidated Plaintiffs seek to add, these challenges will not survive a Rule 12(b) motion to dismiss, and so are futile amendments to the complaints.

### B. Plaintiffs identify no protected interest they had in when the EAPA investigations were initiated

For the first count Consolidated Plaintiffs seek to add to their complaints, they argue that CBP violated 19 U.S.C. § 1517(b)(1) by failing to initiate the EAPA investigations within 15 business days of receiving allegations that Plaintiffs were evading U.S. duties. *See Motion*, ECF No. 33 at 2-3; *e.g.*, *Amended Complaint of LE*

*Commodities, LLC* (attached to the *Motion*, ECF No. 33), at paras. 68-71. Lacking from their motion and the amended complaints, however, is any claim that the alleged delay in initiation injured, or indeed even affected, any of the Plaintiffs in any way.

It was not any of the Plaintiffs who submitted the allegations to CBP that led to the challenged initiations; it was USOMA, the Defendant-Intervenor. Plaintiffs instead have opposed, and continue to oppose, the investigations USOMA asked CBP to undertake. Plaintiffs had no interest in CBP quickly initiating the investigations after USOMA's submission of the allegations; indeed, Plaintiffs were not aware that allegations had been submitted. The only party that had any interest in seeing the allegations acted on, much less acted on quickly, was the alleger, now the Defendant-Intervenor.

The stated purpose of the EAPA legislation was to "speed{} up the process" "to combat {} illegal trade practices" "and help{} companies like U.S. Steel respond to illegal dumping before it causes serious harm to the company and its workers." 161 Cong. Rec. 9526 (2015) (statement of Rep. Bost). Requirements such as the deadlines for initiation and for other steps in an EAPA investigation were put in place by Congress "so that delay in collecting antidumping and countervailing duties on evading imports is limited." *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1336 (Ct. Int'l Trade 2021) (quoting H.R. Rep. No. 114-114, pt. 1, at 86 (2015)) (quotation marks removed). In the *Diamond Tools* decision, this

Court recognized that the intent of these requirements in the EAPA statute and the interests they were intended to protect should "be understood to mean on behalf of U.S. companies, and *there is no specific indication that Congress aimed to avoid prejudicing importers with drawn-out investigations." Id.* at 1336 (emphasis added).

Thus, the challenge Consolidated Plaintiffs seek to bring against the claimed timeliness of CBP's initiation is truly a third-party challenge of the type generally disallowed under Article III of the Constitution. But this challenge goes beyond even typical third-party injury claims, where a party would seek to act on the rights of some other entity not party to the action. Here, Consolidated Plaintiffs seek not only to rely on the interests of a third party, they seek to appropriate the interests of an *opposing* party in this action. Any injury from any delay in initiation was suffered only by the Defendant-Intervenor, the only party who sought initiation and who had an interest in quick action on the allegations. As stated in *Diamond Tools*, the EAPA statutory deadlines were intended to protect the interest in quick action of domestic interested parties such as USOMA, *not* the importers being investigated. Consolidated Plaintiffs would turn the statutory protection intended for Defendant-Intervenor into a sword to be used against Defendant-Intervenor's interests. Consolidated Plaintiffs are certainly not the parties with the appropriate incentives to bring this challenge that rests on Defendant-Intervenor's interests but would work against Defendant-Intervenor's interests, and so Consolidated Plaintiffs lack both Article III and prudential standing to do so.

Consolidated Plaintiffs do not seek redress for any injury that they suffered, and indeed they do not allege that *any* injury to themselves arose out of any delay in the initiation of investigations that ultimately found them to be liable for unpaid duties. Consolidated Plaintiffs allege no facts in their motion or proposed amended complaints that would even suggest the possibility of a recognizable injury. *Cf. Hoshine Silicon (Jia Xing) Indus. Co. v. United States*, 780 F. Supp. 3d 1328, 1335 (Ct. Int'l Trade 2025) ("legal conclusions or mere labels are insufficient to establish injury in fact"). As Consolidated Plaintiffs were not, and do not claim to have been, injured by the statutory violation they now allege occurred, there is no case nor controversy before this Court on this point. There is no injury "particularized" to the Plaintiffs, so there can be no injury that can be fairly traced to the agency's actions, and there is no possibility of redress through a favorable decision as there is no injury to redress. *Cf. Massachusetts*, 549 U.S. at 498, 127 S. Ct. at 1441 (setting out these three requirements for Article III standing).

Lacking both Article III standing as they allege no injury from the challenged action and prudential standing as they lack any right within the zone of interests the statute sought to protect in setting the deadline they rely on in their challenge, Consolidated Plaintiffs' motion to add a count challenging CBP's compliance with the statutory deadline for initiation will not survive a motion to dismiss. This Court need not wait for that motion to resolve this issue, but can dismiss this meritless claim now by denying the motion to amend the complaints as futile. We ask the

12

Court to do so.

   C. *Plaintiffs also fail to claim any recognizable injury in their due process claim*

The second count that Consolidated Plaintiffs seek to raise—that their due process rights were violated by a lack of notice of the investigation and opportunity to comment to the agency before interim measures were imposed (*see Motion*, ECF. No. 33 at 2-4)—fairs no better under a standing analysis than the first count disposed of above. Further, the lack of any injury alleged by the Consolidated Plaintiffs on this issue also makes this a claim upon which no relief could be granted, as this Court has recognized for this line of argument in other cases.

As this Court has recognized, the EAPA "statute is silent ... on when Customs must give notice of allegations of evasion filed with the agency and Customs's {sic} decision to initiate an EAPA investigation." *Am. Pac. Plywood, Inc. & LB Wood Cambodia Co., Ltd.*, CIT No. 20-03914, 2023 WL 4288346, Slip-Op 23-93 at *5 (Ct. Int'l Trade June 22, 2023) (quotation marks removed), *remanded on other grounds*, CAFC No. 2023-2321, 2024 WL 302393 (Fed. Cir. Jan. 26, 2024). Following that initiation, the statute requires only that CBP notify parties to the resultant investigation of the imposition of any interim measures "not later than 5 business days *after making a determination*" to impose such measures. 19 U.S.C. § 1517(c)(4) (emphasis added). The statute contains no requirement that the parties being investigated for evasions of U.S. law be notified in any way prior to that § 1517(c)(4) notification. Nor does it prevent CBP from taking interim measures before making

13

the parties under investigation aware of the investigation or giving them an opportunity to present evidence or make arguments. *See generally* 19 U.S.C. § 1517.

As CBP's imposition of interim measures and subsequent notice to the respondent parties in the underlying EAPA investigation thus violated no statutory directive, Consolidated Plaintiffs seek to challenge CBP's interim measures as a violation of their constitutional rights. Specifically, they seek to add a count to their complaints alleging a violation of their due process rights under the Fifth Amendment of the Constitution, arguing they were denied rights to notice of the investigations and to be heard before any actions were taken. *See Motion*, ECF No. 3 at 3-4. However, the Consolidated Plaintiffs do not challenge the statute as unconstitutional. *See id.* at 2-3; *see also, e.g.*, *Amended Complaint of LE Commodities, LLC* (attached to the *Motion*, ECF No. 33), at paras. 72-78 (challenging only CBP's regulation at 19 C.F.R. § 165.15(d)(1)).[1]

This Court has considered, and dismissed, the same claim regarding due process and interim measures under EAPA actions on a number of occasions. Again and again, that dismissal has been due to a failure on the part of a plaintiff to demonstrate any injury to a legally protected interest that it had suffered from CBP's imposition of interim measures. *See Diamond Tools*, 545 F. Supp. 3d at 1341 ("{the plaintiff} itself fails to state with any particularity that a legitimate property

---

[1] As Consolidated Plaintiffs note, the additional counts they move to add are "substantially identical." *Motion*, ECF No. 33 at 6, fn.2.

interest exists in the specific context of interim measures… and the court declines to do counsel's work."); *Am. Pac. Plywood*, Slip Op. 23-93 at *7 (holding that plaintiffs had shown no protected interests that were violated by CBP's interim EAPA measures); *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1273 (Ct. Int'l Trade 2022) (same).

As this Court has explained in addressing these interim measures/due process claims, "{c}onsideration of due process first requires a determination that some 'private interest' is at issue." *Phoenix Metal Co. v. United States*, No. 23-00048, 2024 WL 2891503, Slip Op. 24-68 at *8 (Ct. Int'l Trade June 10, 2024), *dismissed*, No. 2024-2222, 2024 WL 4534014 (Fed. Cir. Oct. 21, 2024) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S. Ct. 893, 896, 47 L. Ed. 2d 18 (1976)). "Without a constitutionally cognizable interest in either 'liberty' or 'property,' the due process inquiry ends." *Phoenix Metal*, Slip Op. 24-68 at *8 (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59, 119 S. Ct. 977, 989, 143 L. Ed. 2d 130 (1999)).

As this Court and the CAFC have frequently held, "{i}ndisputably, engaging in foreign commerce is not a fundamental right protected by notions of substantive due process." *NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed. Cir. 1998); *see also Phoenix Metal*, Slip Op. 24-68 at *9 ("'The mere subjective expectation of a future business transaction does not rise to the level of an interest worthy of constitutional protection,' and '{n}o one has a protectable interest to engage in

international trade'") (quoting *Am. Ass'n of Exp. & Imp.-Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1250 (Fed. Cir. 1985)). Thus, this Court has consistently required that a concrete and particularized injury to some actual legally recognized right must be shown to be traceable to the imposition of the interim measures, not simply a "vague asser{ation}" of harm, else the due process claim must fail. *See e.g.*, *Phoenix Metal*, Slip Op. 24-68 at *9; *Diamond Tools*, 545 F. Supp. 3d at 1341.

Here, in their motion and amended complaints, Consolidated Plaintiffs do not even offer up so much as "vague assertions" of *any* injury they claim to have incurred due to the interim measures. Indeed, the term "injury" appears nowhere in their motion to amend, nor anywhere in their complaints (amended or otherwise). What harm they are supposed to have suffered is left entirely to the imagination of the reader. As with the first count they seek to add, there are no facts alleged by the Consolidated Plaintiffs that, even if fully accepted, would give rise to recognizable injury or to Article III standing.

The "concrete and particularized injury" required by Constitutional jurisprudence for Article III standing to be found cannot simply be assumed, as would need to be done here, where any mention of injury is absent from Consolidated Plaintiffs' pleadings.

> Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with

> the manner and degree of evidence required at the
> successive stages of the litigation.

*Lujan*, 504 U.S. at 561, 112 S. Ct. at 2136. So while "{a}t the pleading stage, general

factual allegations of injury resulting from the defendant's conduct may suffice"

(*id.*), even general factual allegations are absent from the proposed amended

pleadings here. As this Court has repeatedly held, the imposition of interim

measures in and of itself, even when occurring without notice to and opportunity to

comment for the respondent party, does not result in recognizable injury without an

actual showing of that injury.

Indeed, plaintiffs challenging interim EAPA measures as a proximate cause

of their injury will face a truly uphill battle. As this Court has explained,

> Interim measures are temporary. Under the EAPA
> statute, Customs can extend interim measures only upon
> a final determination of evasion. See 19 U.S.C. § 1517(d).
> If Customs finds in its final determination that no evasion
> exists, any measures taken in the interim, such as a
> suspension of liquidation or collection of cash deposits,
> will be lifted and any additional duties or cash deposits
> paid will be reimbursed to the importer with interest.

*Diamond Tools*, 545 F. Supp. 3d at 1341.

In the EAPA investigations here, as well, the interim measures were only

temporary and finalized only after a full investigation that included multiple rounds

of briefing and many other opportunities for parties to submit evidence and

comments to the agency. This Court has repeatedly found no recognizable due

process injury in such cases. How such purely temporary measures could have

caused any injury to the Plaintiffs is even more unclear here, as no facts even

potentially supporting a claim of injury have been alleged. Given that entire lack of any indication of injury arising from the actions Consolidated Plaintiffs now seek to amend their complaints to challenge, here again there can be no Article III nor prudential standing.

Dealing with a comparable claim on interim measures and due process in *Pheonix Metal*, this Court stated that

> {a}lthough {the plaintiff} does mention interim measures in Count VIII, without linking them to specific harm, given {the plaintiff's} vague description of alleged harm in this case, assuming standing is established, the due process claim of the Complaint is likely insufficiently plead to survive analysis under *Bell Atl. Corp. v. Twombly* or *Ashcroft v. Iqbal. See Iqbal*, 556 U.S. 662, 678 (2009) ("{T}o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.")(internal quotation marks omitted); *see also Twombly*, 550 U.S. 544, 555, (2007)("Factual allegations must be enough to raise a right to relief above the speculative level.")….

*Phoenix Metal*, Slip Op. 24-68 at *9, fn.47.

In the instant case as well, the proposed additional count on due process is insufficiently pled and would not survive a motion to dismiss on standing grounds. Moreover, as this Court has held in multiple cases, without a showing of relevant injury arising from the interim measures challenged, the first step in a due process analysis must also fail. Thus, these claims are not claims upon which relief could be granted, so the proposed second additional count would additionally not survive a motion to dismiss under Rule 12(b)(6). The Court should therefore deny the motion

to amend the complaints to add this second count, as the amendment would also be futile for multiple reasons.

## III.     Plaintiffs' New Claims Would Also Be Dismissed Due to Plaintiffs' Failure to Exhaust Their Administrative Remedies

Both of the additional counts Consolidated Plaintiffs seek to add to their complaints are also futile because they will not survive a motion to dismiss due to Plaintiffs' failure to exhaust their administrative remedies for these new claims. Consolidated Plaintiffs admit that they did not raise either the claims regarding the timeliness of initiation or their due process claims before CBP during the EAPA investigations. *See Motion*, ECF No. 33 at 5 ("the two proposed claims…were not argued at the administrative level").

### A.   *This Court requires the exhaustion of administrative remedies where factual questions and questions of agency views need be resolved*

This Court is directed to, "where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). Under that statutory direction to the Court, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003 (Fed. Cir. 2003) (quotation marks omitted); *see also Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) ("Although that statutory injunction is not absolute, it indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies."). "It is a cardinal principle of administrative law that a court may not consider a party's

19

arguments that were not made before the agency." *NSK Ltd. v. United States*, 25 C.I.T. 583 (2001).

As the CAFC has explained, the requirement of exhaustion serves a number of purposes:

> Requiring exhaustion can protect administrative agency authority and promote judicial efficiency. The requirement can protect an agency's interest in being the initial decisionmaker in implementing the statutes defining its tasks. And it can serve judicial efficiency by promoting development of an agency record that is adequate for later court review and by giving an agency a full opportunity to correct errors and thereby narrow or even eliminate disputes needing judicial resolution.

*Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013) (citations omitted).

This Court has established that exhaustion can be excused in certain "narrow circumstances," including where raising the argument before the agency would have been futile or where "the issue is purely a question of law." *Zhejiang Mach. Imp. & Exp. Corp. v. United States*, 471 F. Supp. 3d 1313, 1338 (Ct. Int'l Trade 2020). Here, the Consolidated Plaintiffs, again relying on *Superior Commercial*, argue that their failure to exhaust their administrative remedies can be excused in this case because, they claim, these are "pure questions of law." *Motion*, ECF No. 33 at 5-6. That claim is incorrect.

"Simply because a question involves a statute does not render it a pure question of law." *Garg Tube Exp. LLP v. United States*, 698 F. Supp. 3d 1230, 1240 (Ct. Int'l Trade 2024). For there to be a "pure question of law," this Court has set

out that

> the following non-exhaustive list of requirements is
> contemplated: (a) in order to qualify for the exception,
> plaintiff shall raise a new argument; (b) this argument
> shall be of purely legal nature; (c) the inquiry shall
> require neither further agency involvement nor additional
> fact finding or opening up the record; and (d) the inquiry
> shall neither create undue delay nor cause expenditure of
> scarce party time and resources.

*Consol. Bearings Co. v. United States*, 166 F. Supp. 2d 580, 587 (2001). Likewise,

"{t}he Federal Circuit has emphasized the exception's limited scope by holding it

only applicable to cases where further factual development would be unnecessary."

*Ellwood City Forge Co. v. United States*, 582 F. Supp. 3d 1259, 1279 (Ct. Int'l Trade

2022).

Where the question is not purely a question of statute, but whether the

agency's practice "under the statute is reasonable," it "necessarily involves a

mix{ed} question of law and fact requiring further involvement by the agency. Thus,

the pure question of law exception is inapplicable." *Garg Tube Exp. LLP v. United

States*, 698 F. Supp. 3d 1230, 1242 (Ct. Int'l Trade 2024). *See also Dillinger France

S.A. v. United States*, 350 F. Supp. 3d 1349, 1372 (Ct. Int'l Trade 2018) (setting out

cases where this Court has held that issues of an agency's *application* of a statute is

not a pure question of law, but requires development of the record before the

agency). Particularly where "the statute does not define the phrase at the center of

{the plaintiff's} legal challenge," "{t}he pure question of law exception…cannot apply

in this instance because its application would undermine the very purposes the

exhaustion requirement is designed to promote," that is, to allow the agency to first set out its views and reasoning for the Court to review. *Tianjin Wanhua Co. v. United States*, 179 F. Supp. 3d 1062, 1067–68 (Ct. Int'l Trade 2016). And "even when the statute is clear, however, it is always preferable to have the agency's interpretation of the statute it is entrusted to administer set forth on the administrative record." *Id.* at 1067 (citing 2 Richard J. Pierce, Jr., *Administrative Law Treatise* § 14.3 (5th ed. 2010)); *see also Fuwei Films (Shandong) Co. v. United States*, 35 C.I.T. 1229, 1230–31 (2011) (stating and citing the same).

Here, the two new challenges Consolidated Plaintiffs seek to raise for the first time are not pure questions of law, but are challenges to whether the agency's actions are reasonable under the statute and the Constitution. For both claims, Consolidated Plaintiffs rely wholly on *Superior Commercial* to argue that these claims are pure questions of law. *See Motion*, ECF No. 33 at 5-6. Whatever was the situation in that case, however, for each of the additional challenges here, the facts show that each of these two new claims would require further involvement by the agency to fully develop the record and to provide the views of the agency on these issues and on the definition of terms in the statute that are at the heart of the challenges.

Moreover, regardless of how Consolidated Plaintiffs couch their challenges, this Court will need look to the true nature of their claims. *See, e.g., Rimco, Inc. v. United States*, 582 F. Supp. 3d 1313, 1321 (Ct. Int'l Trade 2022), *aff'd*, 98 F.4th 1046

(Fed. Cir. 2024) (this Court looks to the "true nature" of a claim, not what a party may attempt to make a claim into through "creative pleading"). Consolidated Plaintiffs' actual challenges are to when CBP initiated these investigations and whether they were given timely notice during those investigations. As this Court has recognized, in these circumstances, it would be improper for the Court to step into the agency's shoes and address these mixed questions of law and fact without allowing the agency to first provide the Court with a record and decision ready for judicial review.

### B. Factual and interpretive issues regarding timing of the initiation have not been resolved

Regarding the issue of the timing of the initiation, exactly what Plaintiffs are challenging is unclear. In the amended complaints, they state that CBP "acknowledged receipt" of the allegations on February 1, 2024 and then initiated the investigations on February 23, 2024. *See, e.g.*, *Amended Complaint of LE Commodities, LLC* (attached to the *Motion*, ECF No. 33), at para. 71. However, there *were* 15 business days between February 1 and February 23, 2024.[2] Thus, although unstated in their complaints, it appears that Plaintiffs are claiming that the date of receipt for purposes of the statute was the January 18, 2024 submission of the allegations by the alleger, and that the 15-business day period must run from that point. *See, e.g.*, *id.*

---

[2] That 22 calendar day period covered three weekends (six days) and the Presidents' Day Federal holiday on February 19, 2024.

However, what occurred on January 18th is not a settled question on the facts. Submission of allegations to CBP does not occur only for purposes of initiation of investigations under 19 C.F.R. § 165.11(a). CBP's regulations also allow "technical assistance and guidance" in preparing an allegation under 19 C.F.R. § 165.11(e). As stated in 19 C.F.R. § 165.11(e)(3), seeking CBP's assistance in the preparation of an allegation and reviewing that it contains all necessary information reasonably available to that party regarding the evasion alleged "does {not} compel a decision by CBP to initiate an investigation." As the alleger in these investigations was represented by experienced EAPA counsel, alleger would reasonably have been aware of CBP's review practice and so likely would have intended the January 18th submission to be a 19 C.F.R. § 165.11(e) submission for review, not for initiation. But nothing about what was intended with that submission is on the record, as Plaintiffs did not raise this issue at the agency to allow the record to be so developed.

Further, any receipt by CBP of a proposed allegation for review and technical assistance cannot be argued to necessarily meet the definition for "receipt" of an allegation under 19 U.S.C. § 1517(b)(1) to trigger the 15-business day deadline for initiation. 19 U.S.C. § 1517(b)(7) in fact *requires* that CBP provide "technical assistance and advice to eligible small businesses" in the preparation of EAPA allegations, but allows CBP to deny that assistance if "the allegation, if submitted, would not lead to the initiation of an investigation" (emphasis added). For CBP to determine that an allegation, "if submitted," would be insufficient for initiation,

24

CBP must necessarily first be able to receive and review the allegation. As *that* reception does not trigger the 15-business day clock under § 1517(b)(1), the statute does not require that every submission of a potential allegation to CBP be a triggering "receipt" as defined by § 1517(b)(1). *Cf. Superior Commercial*, Slip Op. 25-147 at *18 (holding that Commerce is required to treat any reception of information as the submission of an allegation; the opinion in *Superior Commercial* did not appear to have considered submissions under 19 U.S.C. § 1517(b)(7) or 19 C.F.R. § 165.11(e) in that analysis).

We note further that the allegations in these EAPA investigations, as finally filed, are indeed dated February 1, 2024: 15 business days prior to CBP's initiation. Thus, the question of whether January 18th or February 1st was the triggering date for purposes of the 19 U.S.C. § 1517(b)(1) deadline would require additional factual development and should be given to the agency to be the initial decisionmaker on that question. It would also require the agency's views on what occurred on which date under the various statutory definitions of "receipt" and "submission" in order to be ready for judicial review—views the agency has not provided because these issues were not raised before it.

As this inquiry would require further agency involvement and fact finding, this is not a pure question of law, and so these claims are not exempt from the requirements of exhaustion of administrative remedies. The full facts and agency views are not on the record before the Court because Plaintiffs only now have taken

any action to pursue these claims, rather than timely raising them before the agency as required by 28 U.S.C. § 2637(d). Because available administrative remedies were not exhausted by the Plaintiffs, this amendment to their complaints would not survive a Rule 12(6)(b) motion to dismiss, and the motion to include this claim through amendment now should be denied as futile.

C. *Factual and other issues regarding notice and opportunity to defend have not been resolved*

The second claim Consolidated Plaintiffs seek to add through their motion to amend is that "CBP did not provide Plaintiff and Consolidated Plaintiffs with notice or an opportunity to comment prior to imposing interim measures." *Motion*, ECF No. 33 at 4. But again, the resolution of this question would require further factual development and agency involvement that did not occur due to Plaintiffs' failure to exhaust their administrative remedies.

This Court has recognized that what constitutes "notice" that an EAPA investigation is underway and that interim measures may be imposed is not settled. In responding to the same due process argument regarding notice and interim measures that Consolidated Plaintiffs seek to add here, this Court noted in its 2024 *Phoenix Metal* decision that

> CBP notifies parties when interim measures are imposed. Frequently, however, it issues a CF-28 prior to notice of investigation and imposition of interim measures. 19 C.F.R. § 151.11. CBP utilizes this form to gather additional information from the importer prior to deciding whether "reasonable suspicion" exists and imposing interim measures. *Id*. There is no statutory requirement for this form. *See* EAPA {(19 U.S.C. § 1517)}; see also 19

26

> C.F.R. § 151.11. This form was, however, issued in the
> other evasion cases to which {the plaintiff in this case}
> was connected. Although plaintiff agrees that this form
> does not always provide notice of an EAPA investigation
> as other issues may be of concern to CBP, it appears that
> the absence of this form in advance of interim measures
> may have triggered Phoenix's complaint here.

*Phoenix Metal*, Slip Op. 24-68 at *8.

There, the Court noted that the issuance of a CF-28 form by Customs, prior to the imposition of interim measures, could provide the party being investigated notice of an ongoing EAPA investigation. Indeed, the Court noted that the lack of notice claim in *Phoenix Metal* may be seen to have arisen from the *non-issuance* of a CF-28 in that case. As the Court also noted, the statute is silent on what form "notice" to the parties needs to take in an EAPA proceeding; receiving a CF-28 request could be considered notification to a party that it is being investigated. A CF-28 questionnaire seeking additional information certainly can be seen as providing the respondent an opportunity to respond to that questionnaire and to present evidence and argument. *See*, *e.g.*, *Amended Complaint of Energy Pipe & Equipment Rentals, LLC* (attached to the *Motion*), at para. 17 ("CBP issued Form 28 (CF-28) questionnaires to each of the U.S. importers concerning certain entries of OCTG and requested corresponding entry and production documentation. Energy Pipe timely submitted a CF-28 response concerning its entry from TOP.").

Additionally, as discussed in Section II.C of these comments above, binding precedent on the issue of due process requires that there be a showing of "constitutionally cognizable interest" that has been impaired. *Phoenix Metal*, Slip

Op. 24-68 at *8 (citing *Mathews*, 424 U.S. 334-35, 96 S. Ct. 893, 896). As Consolidated Plaintiffs never raised due process claims before the agency, the agency never had the opportunity to develop the record on any injury stemming from the claimed due process violations nor present its views on that matter. Instead, this Court would now have to act as finder of fact regarding injury (facts which, as discussed above, are absent even in allusion from this proceeding so far) and be the first to present its views on the matter. This is exactly the type of situation that the exhaustion requirements have been implemented to avoid.

Here, again, Consolidated Plaintiffs should have raised any such claims before the agency so that a full administrative record and agency reasoning would be available for this Court's review. As they failed to do so, this Court should now find that this additional count that Consolidated Plaintiffs now seek to add would not survive a Rule 12(b) motion to dismiss and dismiss the motion to amend as futile.

### D. *Superior Commercial does not represent a change in the law*

In addition to the exemptions from exhaustion discussed above, this Court has also at times excused exhaustion requirements where "a subsequent change in the law" has occurred. *PPG Indus., Inc. v. United States*, 702 F. Supp. 914, 916–17 (Ct. Int'l Trade 1988). While not argued directly by Consolidated Plaintiffs in their motion to amend the complaints, this appears to be alluded to as another reason that Plaintiffs should be allowed to amend their complaints with issues they failed to raise before the agency.

Contrary to Consolidated Plaintiffs' claim that *Superior Commercial* "represents a shift in the Court's precedent as it has previously rejected similar claims" (*Motion*, ECF No. 33 at 3), other decisions by *this* Court, unlike decisions from higher courts, are persuasive rather than controlling in other proceedings before this Court. One out-of-step ruling before this Court (particularly a recent one where litigation and likely appeals are still underway) is not a change in law. *See, e.g., Garg Tube*, 698 F. Supp. 3d at 1242 ("a decision by this Court…does not render the law settled"). *Superior Commercial* does not represent a "shift in the Court's precedent" as it is not controlling on the Court's decision in this case.

Consolidated Plaintiffs also claim that *Superior Commercial* is the first time this Court has opined on whether CBP must comply with the 15-business day deadline in 19 U.S.C. § 1517(b)(1). While technically true on that narrow point, this argument fails to recognize that this is not the first time that this Court has addressed § 1517 deadlines like that in § 1517(b)(1). In *Diamond Tools*, this Court addressed a similar challenge that claimed that CBP had illegally failed to meet the 90-calendar day deadline under § 1517(e) for imposing interim measures. *See Diamond Tools*, 545 F. Supp. 3d at 1337-38. Contrary to the approach taken in *Superior Commercial*, the Court in *Diamond Tools* held that the error was simply a procedural one and, as the plaintiff there failed to show it was substantially prejudiced by the procedural error, no remedy was necessary. *Id.* at 1338-39; *cf. Superior Commercial*, Slip Op. 25-147 at *21-22 (holding that the plaintiff in that

case had suffered substantial prejudice by CBP's failure to meet statutory deadlines). Thus, the issue of CBP's adherence to statutory deadlines and what remedies are appropriate for any procedural errors on that front are not novel to *Superior Commercial*.

As already discussed above, this Court has also addressed due process claims regarding notice and opportunity to comment prior to the imposition of interim EAPA measures in a number of cases, repeatedly dismissing such claims. *See, e.g.*, *Diamond Tools*, 545 F. Supp. 3d at 1341, *etc*. Neither due process nor statutory deadlines are issues that were unknown or unaddressed prior to *Superior Commercial*. Plaintiffs here had every opportunity to raise any such claims before CBP, as respondents in many other EAPA investigations have done. Plaintiffs here chose not to do so, failing to exhaust the administrative remedies that were then before them. A non-binding decision of a trial court that is simply divergent from the views of this Court in other instances is not a change in the law that would excuse that failure.

## IV.    Conclusion

As set out in the comments above, Consolidated Plaintiffs' proposed amendments to their complaints are futile. Plaintiffs lack standing on both proposed additional counts, as the claims in both are unsupported by *any* claim of injury, much less any claims supported by alleged facts. Consolidated Plaintiffs fail to raise any case or controversy for this Court to address on these particular issues. Moreover, Consolidated Plaintiffs admit they did not exhaust their administrative

remedies on these issues; that failure is not excused as a pure question of law. Both issues would require considerable development of both the factual record and the views of the agency before being ripe for review by this Court. Given these considerable failures, this Court should find that these proposed amendments to the complaints would not survive a motion to dismiss and so are futile now. As such, the Court should deny the Consolidated Plaintiffs' motion to file amended complaints. We ask the Court to do so. A proposed order to that end is attached to this response.

Respectfully submitted,

/s/ Roger Schagrin
Roger B. Schagrin
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.,
Suite 500
Washington, D.C. 20001
*Counsel for USOMA*

Dated: January 12, 2026

31

## UNITED STATES COURT OF INTERNATIONAL TRADE

CENTRIC PIPE LLC,

       *Plaintiff,*

*and*

LE COMMODITIES, LLC, TREK
METALS, INC., ENERGY PIPE &
EQUIPMENT RENTALS, LLC, *and*
KANA ENERGY SERVICES, INC.,

       *Consolidated Plaintiffs,*

       v.

UNITED STATES,

       *Defendant,*

*and*

U.S. OCTG MANUFACTURERS
ASSOCIATION,

       *Defendant-Intervenor.*

**Consol. Court No. 25-00182**

## PROPOSED ORDER

Upon consideration of the motion of Plaintiff and Consolidated Plaintiffs to file

amended complaints, and upon consideration of all other papers and proceedings

herein, it is hereby

      **ORDERED** that the motion is **DENIED.**

      **SO ORDERED.**

_____
       JOSEPH A. LAROSKI, JR., JUDGE

Dated: _____, 2026
      New York, New York