## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

<table>
<tr><td>

**TREK METALS INC.,**

        **Plaintiff,**

**CENTRIC PIPE LLC, LE COMMODITIES, LLC, ENERGY PIPE & EQUIPMENT RENTALS, LLC, and KANA ENERGY SERVICES, INC.**

        **Consolidated Plaintiffs,**

   **v.**

**UNITED STATES,**

        **Defendant,**

   **and**

**U.S. OCTG MANUFACTURERS ASSOCIATION**

        **Defendant-Intervenor.**

</td><td>

**Consol. Ct. No. 25-00182**

</td></tr>
</table>

## <u>PLAINTIFF TREK METALS' MOTION FOR JUDGMENT ON THE AGENCY RECORD PURSUANT TO RULE 56.2</u>

Pursuant to Rule 56.2 of the Rules of this Court, Plaintiff Trek Metals Inc. ("Trek Metals" or "Plaintiff") hereby moves for judgment on the agency record with respect to the determinations by U.S. Customs and Border Protection ("CBP") that Trek Metals entered merchandise covered by the U.S. Department of Commerce antidumping and countervailing duty orders on OCTG from China through evasion. The determinations at issue include: (1) an initial determination issued on February 24, 2025, by CBP's Trade Remedy Law Enforcement Directorate ("TRLED") ("TRLED Determination"); and (2) a *de novo* Administrative Review Determination issued on July 2, 2025, by CBP's Office of Regulations and Rulings ("ORR") ("Review Determination"). This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

As set forth in detail in the accompanying *Memorandum of Points and Authorities of Plaintiff Trek Metals Inc. in Support of Rule 56.2 Motion for Judgment on the Agency Record*, TRLED's Determination and ORR's Review Determination are arbitrary, capricious, an abuse of discretion, and are otherwise not in accordance with law. Consequently, judgment should be entered for Plaintiff Trek Metals and this action should be remanded to CBP for disposition consistent with the order and opinion of the Court.

A proposed order accompanies this motion.

Respectfully submitted,

*/s/ Frederick P. Waite*
Frederick P. Waite
Kimberly R. Young

VORYS SATER SEYMOUR & PEASE LLP
1909 K Street, NW, Suite 900
Washington, DC 20006
(202) 467-8852 / 8881

*Counsel to Consolidated Plaintiff*
*TREK METALS INC.*

Dated: April 10, 2026

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE**

| | |
|---|---|
| **TREK METALS INC.,**<br><br>　　　　　**Plaintiff,**<br><br>**CENTRIC PIPE LLC, LE COMMODITIES, LLC, ENERGY PIPE & EQUIPMENT RENTALS, LLC, and KANA ENERGY SERVICES, INC.**<br><br>　　　　　**Consolidated Plaintiffs,**<br><br>　　　**v.**<br><br>**UNITED STATES,**<br><br>　　　　　**Defendant,**<br><br>　　**and**<br><br>**U.S. OCTG MANUFACTURERS ASSOCIATION**<br><br>　　　　　**Defendant-Intervenor.** | **Consol. Ct. No. 25-00182** |

## <u>ORDER</u>

Upon consideration of the Motion for Judgment on the Agency Record of Plaintiff Trek Metals Inc. ("Trek Metals" or "Plaintiff"), the responses therefore, and all other papers and proceedings in this case, it is hereby

**ORDERED** that Plaintiff's Motion for Judgment on the Agency Record is granted; and it is further

**ORDERED** that this matter is remanded to U.S. Customs and Border Protection for redetermination of its determination as set forth in this Court's accompanying opinion.

　　**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Hon. Joseph A. Laroski, Jr., Judge

Dated: _____
　　　　New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE**

| | |
|---|---|
| TREK METALS INC., <br><br>     **Plaintiff,** <br><br> CENTRIC PIPE LLC, LE COMMODITIES, LLC, ENERGY PIPE & EQUIPMENT RENTALS, LLC, and KANA ENERGY SERVICES, INC. <br><br>     **Consolidated Plaintiffs,** <br><br>   **v.** <br><br> UNITED STATES, <br><br>     **Defendant,** <br><br>   **and** <br><br> U.S. OCTG MANUFACTURERS ASSOCIATION <br><br><br>     **Defendant-Intervenor.** | **Consol. Ct. No. 25-00182** |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**OF PLAINTIFF TREK METALS INC.**
**IN SUPPORT OF RULE 56.2 MOTION**
**<u>FOR JUDGMENT ON THE AGENCY RECORD</u>**

Frederick P. Waite
Kimberly R. Young
VORYS SATER SEYMOUR AND PEASE LLP
1909 K Street, NW, Suite 900
Washington, DC 20006
(202) 467-8852

*Counsel for*
*Plaintiff Trek Metals Inc.*

Dated: April 10, 2026

**TABLE OF CONTENTS**

Rule 56.2 Statement………………………………………………………………..........1

Administrative Determination Sought to Be Reviewed………………………………...……1

ARGUMENT…………………………………………………………………………….. 2

I.  INTRODUCTION………………………………………………………………..………….2

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY………………..……....3

      A.  Interim Measures and Evasion Investigation…………………………..………...4

      B.  On-Site Verification…………………………………………………..……….…6

      C.   Evasion Determination and Adverse Inferences…………………..…….…….…8

      D.   Administrative Review……………………………………………..………....9

III.  STANDARD OF REVIEW……………………………………………...…..……..11

IV.  DUE PROCESS CLAIMS………………………………………………..…..…….. 12

    A.  CBP's Regulation 19 C.F.R. § 165.12 Is Contrary to the Statutory 15-Day
      Initiation Deadline Set by 19 U.S.C. § 1517(b)(1)………………………...…12

    B.  CBP's Regulation 19 C.F.R. § 165.15(d)(1) Is Arbitrary, Capricious,
      and Not in Accordance with Law……….…………………………….......  14

V.  THE RECORD CONTAINS NO EVIDENCE THAT CHINESE MOTHER PIPE
    WAS USED TO PRODUCE OCTG FOR TREK METALS, AND PIPE PRODUCED
    IN THAILAND FROM BILLET IS NOT COVERED MERCHANDISE………....… 17

VI.  THE EVASION DETERMINATION AGAINST TREK METALS IS BASED
    ENTIRELY ON ADVERSE INFERENCES RATHER THAN RECORD
    EVIDENCE………………………………………………………………………20

VII.  TREK METALS HAD ONLY 5 ENTRIES OF OCTG FROM THAILAND,
    YET CBP CLAIMS IT HAD NO OBLIGATION TO REVIEW THEM…………… 22

VIII.  CONCLUSION………………………………………………………………….23

## Table of Authorities

**CASES**

*Armstrong v. Manzo,* 380 U.S. 545 (1965)…………………………………………………16

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281 (1974)……………….16

*Brock v. Roadway Express, Inc.*, 481 U.S. 252 (1987)………………………………………15,16

*Consol. Edison Co. v. NLRB,* 305 U.S. 197 (1938)………………………………………………...11

*Diamond Tools Tech. LLC v. United States,* 545 F. Supp. 3d 1324 (CIT 2021)………………...17

*DuPont Teijin Films USA v. United States,* 407 F.3d 1211 (Fed. Cir. 2005)…………………... 11

*Grannis v. Ordean*, 234 U.S. 385 (1914)………………………………………………………..15

*Intellectual Ventures I LLC v. Motorola Mobility LLC,* 870 F.3d 1320 (Fed. Cir. 2017)……..... 12

*Itochu Bldg. Prods. v. United States*, 733 F.3d 1140 (Fed. Cir. 2013)………………………… 13

*Mathews v. Eldridge,* 424 U.S. 319 (1976)…………………………………………………. 15,16

*Me. Cmty. Health Options v. United States*, 590 U.S. 296 (2020)……………………………..  13

*Mittal Steel Point Lisas Ltd. v. United States,* 548 F.3d 1375 (Fed. Cir. 2008)………………... 11

*NEC Corp. v. United States*, 151 F.3d 1361 (Fed. Cir. 1998)…………………………………...15

*Nippon Steel Corp. v. United States,* 458 F.3d 1345 (Fed. Cir. 2006)…………………….. *passim*

*NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292 (1939)…………………….11,20

*OSI Pharmaceuticals, LLC v. Apotex Inc.,* 939 F.3d 1375 (Fed. Cir. 2019)…………………... 12

*PSC VSMPO-Avisma Corp. v. United States,* 688 F.3d 751 (Fed. Cir. 2021)……………….......16

*Ramirez v. Dep't of Homeland Sec.,* 975 F.3d 1342 (Fed. Cir. 2020)……………………..…16

*Royal Brush Mfg., Inc. v. United States,* 45 CIT __, 483 F. Supp. 3d 1294, 1305 (2020)……....16

*Royal Brush Mfg. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023)……………………..…15

*Superior Commercial Sols., LLC v. United States*, Slip Op. 25-147, 2025 Ct. Intl. Trade LEXIS 153 (2025)…………………..…………………... *passim*

*Suramerica de Aleaciones Laminadas, C.D. v. United States,* 17 CIT 146, 818 F.Supp. 348 (1993)…………………………………………………............... 12

**STATUTES**

19 U.S.C. § 1517……………………………………………………………….. 1

19 U.S.C. § 1517(a)(3)…………………………………………………... 17

19 U.S.C. § 1517(a)(5)(A)…………………………………………………. 17

19 U.S.C. § 1517(b)……………………………………………………….. 12,13

19 U.S.C. § 1517(b)(1)……………………………………………………. 12,13

19 U.S.C. § 1517(c)(1)(A)…………………………………………………. 17

19 U.S.C. § 1517(g)(2)……………………………………………………. 11

28 U.S.C. § 1581(c)………………………….....……………………………………......1

**REGULATIONS**

19 C.F.R. § 165.12……………………………………………………….. *passim*

19 C.F.R. § 165.13(b)……………………………………………………….23

19 C.F.R. § 165.15(d)(1)………………………………………………… *passim*

**ADMINISTRATIVE DETERMINATIONS**

*Certain Oil Country Tubular Goods from the People's Republic of China: Final
    Determination of Sales at Less Than Fair Value, Affirmative Final Determination
    of Critical Circumstances and Final Determination of Targeted Dumping,*
    75 Fed. Reg. 20,335 (April 19, 2010)…………………………………………. 3

*Certain Oil Country Tubular Goods from the People's Republic of China: Amended
    Final Affirmative Countervailing Duty Determination and Countervailing
    Duty Order,* 75 Fed. Reg. 3,203 (January 20, 2010)……………….…………… 3

U.S. Customs and Border Protection, *Notice of Determination as to Evasion
    —EAPA Consolidated Case Number 7890 (Feb. 24, 2025)*…………………. *passim*

U.S. Customs and Border Protection, Office of Trade, Regulations and Rulings,
    *Administrative Review Determination in EAPA Consolidated Case No. 7890*
    (July 2, 2025)………………...……………………………………………..*passim*

ii

**RULE 56.2 STATEMENT**

**Administrative Determination Sought to Be Reviewed**

In this action, Consolidated Plaintiff Trek Metals Inc. ("Trek Metals" or "Trek") asks the Court to review the determinations by U.S. Customs and Border Protection ("CBP") that Trek Metals entered merchandise covered by the U.S. Department of Commerce ("Commerce") antidumping ("AD") and countervailing duty ("CVD") orders on OCTG from China (the "AD/CVD Orders") through evasion.

The determinations at issue include: (1) an initial evasion determination issued on February 24, 2025, by CBP's Trade Remedy Law Enforcement Directorate ("TRLED") (*See* U.S. Customs and Border Protection, *Notice of Determination as to Evasion—EAPA Consolidated Case Number 7890 (Feb. 24, 2025)* ("*TRLED Determination*"))(C.R. 374)[1]; and (2) a *de novo* Administrative Review Determination issued on July 2, 2025, by CBP's Office of Regulations and Rulings (*See Administrative Review Determination in EAPA Consolidated Case No. 7890,* CBP Office of Trade, Regulations and Rulings (July 2, 2025) ("*Review Determination*"))(C.R. 395).

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), which provides the Court with exclusive jurisdiction over all civil actions commenced under 19 U.S.C. § 1517.

---

[1] Citations to the administrative record are made to the confidential record document number (C.R.) or the public record document number (P.R.) and to the specific page number of the cited information in the document, where applicable.

**ARGUMENT**

**I.      INTRODUCTION**

In Consolidated EAPA Case 7890, CBP violated Trek Metals' due process rights protected under the Fifth Amendment by imposing interim measures pursuant to 19 C.F.R. § 165.15(d)(1) without providing Trek Metals an opportunity to submit factual information or written arguments.

CBP applied an adverse inference that all of TOP's OCTG was "mother pipe" from China (*i.e.*, "covered merchandise"), even though (a) the record contained documentation showing TOP's purchases and importation of billets; (b) the verification report contained extensive evidence that TOP had the equipment, machinery, and personnel to convert imported billet into OCTG, as TOP actually demonstrated at verification; and (c) TOP stated at verification that all of the OCTG produced for Trek Metals was made from billet, not "mother pipe".

In the *Review Determination*, CBP claimed that its determination that all OCTG exported from Thailand by TOP was produced from Chinese "mother pipe" was based on the record and not on any adverse inferences.  In effect, however, CBP continued to apply TRLED's adverse inference "that all of the OCTG that { TOP } exported into the United States during the POI was Chinese-origin OCTG."

The record in this EAPA investigation contains extensive evidence showing that TOP used billet – not "mother pipe" from China – to produce the five entries of OCTG that Trek Metals imported. Yet, CBP claims that it was not required to review each of Trek Metals' five entries to determine whether Trek Metals imported "covered merchandise" (*i.e.*, OCTG produced from Chinese "mother pipe").  This conclusion is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

2

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 18, 2024, the U.S. OCTG Manufacturers Association (the Allegers) submitted allegations of evasion against 8 U.S. importers, including Trek Metals Inc. Allegations against two additional importers were submitted on February 1, 2024.  The Allegers claimed that Trek Metals and the other named importers were importing Chinese-origin OCTG that was <u>transshipped through Thailand</u> and thereby evading the antidumping ("AD") and countervailing duty ("CVD") orders on OCTG from China.  The relevant case numbers are A-570-943 and C-570-944, and the China-wide rates are AD 99.14% and CVD 13.41%. *See Certain Oil Country Tubular Goods from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, Affirmative Final Determination of Critical Circumstances and Final Determination of Targeted Dumping*, 75 Fed. Reg. 20,335, 20,340 (April 19, 2010); *Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order,* 75 Fed. Reg. 3,203, 3,205 (January 20, 2010).

CBP's Trade Remedy Law Enforcement Directorate ("TRLED") initiated an EAPA investigation of Trek Metals and the other importers on February 23, 2024. CBP did not inform the parties or the public about this internal CBP decision until interim measures were imposed three months later. *See Letter from CBP, "Notice of Initiation of Investigation and Interim Measures – EAPA Cons. Case 7890,"* dated May 31, 2024 (hereinafter *"TRLED Interim Measures"*)(C.R. 33) at 26.

On March 6-7, 2024, CBP issued CF28 Requests for Information ("RFI") to all ten importers, including Trek Metals.  *See TRLED Interim Measures* (C.R. 33) at 11. The RFI to Trek Metals requested detailed information regarding one of the five entries of OCTG that Trek

3

Metals imported from Thailand Oil Pipe Co., Ltd. ("TOP"), Trek's only Thai supplier of OCTG. Trek Metals submitted the requested information on April 5, 2024. *Id*. (C.R. 33) at 11, fn 119.

### A. Interim Measures and Evasion Investigation

On May 31, 2024, CBP issued a notice of investigation and interim measures in EAPA Consolidated Case Number 7890. *See TRLED Interim Measures*, dated May 31, 2024 (C.R. 33). Also on May 31, 2024, CBP issued RFIs to Trek Metals and the other importers as well as to TOP. *See Letter from CBP to Trek Metals, "EAPA 7890 – Request for Information from Trek Metals, Inc*.," dated May 31, 2024 (C.R. 44); *see also Letter from CBP to TOP, "EAPA 7890 – Request for Information from Thai Oil Pipe Co., Ltd.*," dated May 31, 2024 (C.R. 43).

On July 4, 2024, Trek Metals submitted its response to CBP's RFI. *See Letter from Trek Metals, "EAPA 7890:  Trek Metals' Response to Request for Information*" dated July 4, 2024 (hereinafter "TREK RFI") (C.R. 177-218).  Trek Metals' RFI response included extensive documentation, including:

- Trek Metals' business license, articles of incorporation and organization chart (TREK RFI Response at Exhibits 1-2) (C.R. 205).

- Trek Metals' audited financial statements, chart of accounts, trial balance, internal financial statements, tax returns, accounting flowcharts, bank statements, and accounts receivables / account payables details (TREK RFI Response at Exhibits 3-10) (C.R. 205).

- A listing of Trek Metals' customers, pages from the company's website, product code list, and copies of TOP's product brochures from 2019 and 2022 (TREK RFI Response at Exhibits 11-14) (C.R. 205).

- Photographs and travel information for Trek Metals' mill visit to TOP (TREK RFI Response at Exhibits 15-16) (C.R. 205).

- Copies of Trek Metals' POs for OCTG from TOP and complete document packages for all five entries and corresponding POs (including copies of TOP's production records from each step of its conversion of billet to OCTG) (TREK RFI Response at Exhibits 18-19) (C.R. 206 and 177-203).

4

- Copies of all of Trek Metals' emails with TOP and TOP's Authorization Letter (TREK RFI Response at Exhibits 21-22) (C.R. 206).
- Trek Metals' quantity and value reconciliation, General Ledger detail, and sales sub-ledger data (TREK RFI Response at Exhibits 23-25) (C.R. 207).
- Copies of TOP's API 5CT certificate and production process record flow (TREK RFI Response at Exhibits 17 and 26) (C.R. 205 and 207).

On July 9, 2024, TOP submitted its response to CBP's RFI. *See Letter from TOP, "EAPA 7890:  Thai Oil Pipe Co., Ltd. RFI Response*" dated July 9, 2024 (TOP RFI) (C.R. 244-247).  TOP's response contained extensive documentation (56 exhibits in total), including information about its production capacity, monthly production, production process, significant inputs and input suppliers, a video of its manufacturing facility and manufacturing process, reconciliation worksheet for its raw material purchases, and production documents for selected U.S. sales.  CBP requested documentation from TOP regarding 10 shipments to the United States during the POI; however, only one of these shipments was for Trek Metals.  *See* CBP RFI to TOP (C.R. 43) at Appendix I (Line 7). CBP did not request mill test certificates from TOP for the other four shipments entered by Trek Metals.  *See TRLED Determination* (C.R. 374) at 12. However, Trek Metals provided mill test certificates for all of its entries from TOP as well as all of TOP's production reports for this material.  *See TREK RFI at Exhibit 19* (C.R. 177-203).

On August 16, 2024, CBP issued a Supplemental Request for Information to TOP, and on August 26, 2024, CBP issued a Supplemental Request for Information to Trek Metals.  *See TRLED-Supplemental RFI to TOP*, dated August 16, 2024 (C.R. 287); *TRLED-Supplemental RFI to Trek Metals*, dated August 26, 2024 (C.R. 295). TOP submitted its response to the SRFI on September 10, 2024, and Trek Metals submitted its response to the SRFI on September 16, 2024.  *See TOP Supplemental RFI Questionnaire Response*, dated September 10, 2024 (C.R. 297); *TREK-Supp. RFI Response*, dated September 16, 2024 (C.R. 302).

On October 8, 2024, Trek Metals submitted voluntary factual information in accordance with the timeline set out in the EAPA regulations.  This submission provided a detailed chronology of the transactions for two of Trek Metals' POs, including two intermediaries (middlemen) and supporting documentation such as copies of contracts, invoices, packing lists, and payment documents.  *See Trek Metals Voluntary Factual Submission (VFI Exhibits 1-9)*, dated October 8, 2024 (C.R. 318).

### B.  On-Site Verification

CBP conducted an on-site verification at TOP in Thailand from November 4—8, 2024, and issued a verification report on December 6, 2024.  *See CBP Memorandum, "On-Site Verification Report*," dated December 6, 2024 (*Verification Report*) (C.R. 352).  During its on-site visit, CBP noted that it requested and was granted access to TOP's production records, as well as to TOP's accounting system and sales ledger which "showed all sales to the importers". *See Verification Report* (C.R. 352) at 26-27.

As noted in the *Verification Report*, TOP explained that it could produce OCTG from one of two input materials: billet (*i.e*., a solid, semi-finished, cylindrical piece of steel that is used as raw material for further processing) or "mother pipe".  When asked to define "mother pipe", TOP explained that mother pipe is considered hollow pipe that has already undergone heat treatment by TOP's supplier and does not undergo any additional heat treatment in Thailand. *Verification Report* (C.R. 352) at 20.

During the factory tour, CBP observed TOP producing OCTG from billet, and the verification report details each step of TOP's production process.  *Verification Report* (C.R. 352) at 21-24.  CBP also took photographs at each step of the production process, confirming TOP's

manufacturing capabilities to produce OCTG from billet.  *See Verification Report* (C.R. 352) at Attachment VII (on-site photographs at TOP).

CBP noted in its verification report that it observed that the factory workers at TOP were "actively participating in various production processes" during the factory tour, that the workers operating machinery who were interviewed "were able to demonstrate their knowledge of the machinery and showed example records that were produced from their test", and that "the factory was covered in steel debris and dust, which is indicative of a factory that operates regularly." *Verification Report* (C.R. 352) at 22-23. CBP also observed testing being conducted on the OCTG produced during the factory tour, and both the sample and the pipe passed the product testing – again confirming TOP's capabilities to produce OCTG.  *See Verification Report* (C.R. 352) at 24.

TOP explained that the majority of its OCTG production begins with mother pipe (hollow pipe) that it purchased from China.  *See Verification Report* (C.R. 352) at 20.  TOP's remaining OCTG production utilizes **billet** that also is purchased from China, and TOP imported a not insignificant volume of billet from China for its OCTG production.  *Id.* (C.R. 352)

During the verification, CBP noted that TOP confirmed that the OCTG purchased by Trek Metals (and just one other importer) was **produced only from billets, not from mother pipe (hollow pipe)**:

> We requested additional transactions that involve Energy Pipe and Trek Metals purchasing OCTG that began production from mother pipe from China.  TOP provided a list of invoices and associated bills of lading for purchases from Energy Pipe and Trek Metals and stated that **these two importers only purchased products produced from {  } billets.**

*Verification Report* (C.R. 352) at 26 (**emphasis added**).

7

### C.  Evasion Determination and Adverse Inferences

On December 19, 2024, Trek Metals submitted its written arguments, and on January 6, 2025, Trek Metals submitted its response to Allegers' written argument.  *See Letter from Trek Metals, "EAPA 7890: Trek Metals' Written Arguments*," dated December 19, 2024 (Trek Written Arguments) (C.R. 358); see also *Letter from Trek Metals, "Trek Metals' Response to Alleger's Written Argument*," dated January 6, 2025 (Trek's Response to Written Arguments) (C.R. 370).

Trek Metals emphasized in its written argument that "mother pipe" (*i.e*., hollow pipe) is different from **billet** which is a solid, semi-finished steel input that is heated and then pierced in order to form a hollow pipe.  *Trek Written Arguments* (C.R. 358) at 7.

On February 24, 2025, CBP issued its Notice of Determination as to Evasion in Consolidated Case 7890 ("*TRLED Determination*") (C.R. 374). Despite TOP's explanation at verification that all of the OCTG it exported to Trek Metals was **produced solely from billet** (*see Verification Report* (C.R. 352) at 26) and TOP's records showing it produced a significant percentage of its OCTG from **billet** (*see* TOP SRFI (C.R. 297) at Exhibit S1-18), CBP applied an adverse inference against TOP and determined that all of the OCTG that TOP exported to the United States – including the OCTG purchased by Trek Metals produced in Thailand from billet by TOP – was of Chinese origin.  *TRLED Determination* (C.R. 374) at 43.

Despite acknowledging that TOP may have had some OCTG production that "uses { } billet in Thailand and **qualifies as Thai-origin OCTG,** CBP determined to treat all of TOP's OCTG as being produced from Chinese mother pipe.  *Id.*  Specifically, CBP stated in its evasion determination: "To draw this adverse inference, CBP is relying on factual information on the record, including the facts that {  } TOP import{s} … mother pipe from China" and that mother

8

pipe has "the physical characteristics of Chinese-origin OCTG subject to the AD/CVD Orders." *Id.*

CBP also applied adverse inferences against several importers, but Trek Metals was not included in that list of companies that CBP found had not fully cooperated in the investigation or complied to the best of their ability with CBP's requests for information. *See TRLED Determination* (C.R. 374) at 35. Even though CBP found that Trek Metals was fully cooperative and despite the fact that Trek Metals provided comprehensive "tracing documentation" to prove that TOP used **only billet** – not "mother pipe" – to produce the OCTG that Trek Metals imported from Thailand, CBP effectively applied its adverse inferences regarding TOP against Trek Metals.

### D. Administrative Review

On April 4, 2025, Trek Metals timely submitted a request for administrative review. In its review request, Trek Metals argued, *inter alia*, that CBP failed to base its evasion determination regarding Trek Metals on substantial evidence, relying instead on an adverse inference that was contrary to the record facts. *Trek Metals Request for Administrative Review* (C.R. 376) at 10—19. For example, CBP applied an adverse inference that all of TOP's OCTG was "mother pipe" from China, even though the record contained documentation showing TOP's purchases and importation of billets; TOP demonstrated during verification that it had billet in inventory; and the verification report contained extensive evidence that TOP had the equipment, machinery, and personnel to convert imported billet into OCTG, as TOP actually demonstrated at verification. *Id.*

On July 2, 2025, CBP (RR) issued the Administrative Review Determination, affirming the TRLED Determination of evasion. *See Admin. Review Determination in EAPA Consolidated*

*Case No. 7890,* CBP Office of Trade, Regulations and Rulings (July 2, 2025) ("Review Determination") (C.R. 395).  CBP claimed in the Review Determination that "the use of adverse inferences is unnecessary to find substantial evidence of evasion in this case, and RR relies herein solely on the record and not on adverse inferences."  *Review Determination* (C.R. 395) at 27.

CBP explained in its *Review Determination* that "mother pipe" (*i.e.,* hollow pipe from China) falls with the scope of the AD/CVD orders on OCTG.  *Review Determination* (C.R. 395) at 23.  CBP further stated that "the plain scope language is clear and, therefore, CBP did not need to direct a covered merchandise referral to Commerce."  *Review Determination* (C.R. 395) at 27.

Contrary to its stated claim that its final evasion determination relied "solely on the record and not on adverse inferences," CBP concluded in the Review Determination that "the finished **OCTG that contained Chinese 'mother pipe,**' which Energy Pipe, Kana, and Trek Metals imported into the United States {from TOP} are 'covered merchandise'." *Id*. (C.R. 395) at 23. However, CBP cited zero record evidence that the OCTG produced by TOP and imported by Trek Metals was made from Chinese mother pipe.  Rather, CBP continued to apply TRLED's adverse inference "that all of the OCTG that PET and TOP exported during the POI is Chinese-origin {i.e., Chinese mother pipe}." *See TRLED Determination* (C.R. 374) at 66 and *Review Determination* (C.R. 395) at 27.

CBP further noted that "to the extent that Energy Pipe and Trek Metals claim that some of their entries do not contain subject merchandise because they were made from {  } billets, the burden would be on Energy Pipe and Trek Metals to provide the tracing documentation, rather than on CBP." *Review Determination* (C.R. 395) at 24.  However, Trek Metals did provide tracing documentation for all five of its entries of OCTG from Thailand.  *See* TREK RFI Response at Exhibit 19 (C.R. 177-203).

Finally, CBP stated that "it is the responsibility of the importer to provide to CBP sufficient documentation to support the importer's claims." *Review Determination* (C.R. 395) at 24. And yet CBP claimed that it was not required to conduct "an entry-by-entry review" in order to determine whether TOP used <u>billet</u> – not mother pipe – to produce the OCTG imported by Trek Metals in its five entries. *Id.* (C.R. 395) at 23—24.

## III.    STANDARD OF REVIEW

The *Enforce and Protect Act* (EAPA) directs the Court to determine "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2).

When reviewing agency determinations, findings, or conclusions for substantial evidence, the Court assesses whether the agency action is reasonable given the record as a whole. *Nippon Steel Corp. v. United States,* 458 F.3d 1345, 1350-51 (Fed. Cir. 2006). The substantial evidence standard of review requires review of the administrative record as a whole, including that which fairly detracts from its weight. *Nippon Steel Corp.,* 458 F.3d at 1351 (Fed. Cir. 2006); *see also Mittal Steel Point Lisas Ltd. v. United States,* 548 F.3d 1375, 1380-81 (Fed. Cir. 2008) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight, including contradictory evidence or evidence from which conflicting inferences could be drawn") (cleaned up). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA v. United States,* 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, (1938)).

"Substantial evidence is more than a scintilla and must do more than create a suspicion of the existence of the fact to be established." *Nippon Steel Corp.,* 458 F.3d 1345, 1351 (Fed. Cir. 2006) (cleaned up and quoting *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939)).

"'Mere speculation' is not substantial evidence." *OSI Pharmaceuticals, LLC v. Apotex Inc.,* 939 F.3d 1375, 1382 (Fed. Cir. 2019) (citing *Intellectual Ventures I LLC v. Motorola Mobility LLC,* 870 F.3d 1320, 1331 (Fed. Cir. 2017)).  S*ee also Suramerica de Aleaciones Laminadas, C.D. v. United States,* 17 CIT 146, 175, 818 F.Supp. 348, 373 (1993) ("a mere possibility ... is not substantial evidence").

## IV.   DUE PROCESS CLAIMS

### A.   CBP's Regulation 19 C.F.R. § 165.12 Is Contrary to the Statutory 15-day Initiation Deadline Set By 19 U.S.C. § 1517(b)(1).

Trek Metals filed an amended complaint on December 15, 2025 to add this count to its initial complaint in light of the Court's recent decision in *Superior Commercial Sols., LLC v. United States*, Slip Op. 25-147, 2025 Ct. Intl. Trade LEXIS 153 (2025).  In *Superior Commercial*, the Court held that the 15-business day deadline for CBP to initiate an investigation after receiving an allegation as provided for in 19 U.S.C. § 1517(b)(1) is mandatory.  *See Superior Commercial*, 2025 Ct. Intl. Trade LEXIS at *16 ("'shall means "shall," and "shall" is a mandatory statutory obligation").  The Court also held that "Customs' regulation 19 C.F.R. § 165.12 is *not in accordance with law* to the extent that the regulation allows Customs to extend and alter Congress' 15-day statutory deadline for an unlimited period of time, which is inconsistent with 19 U.S.C. § 1517(b) that reflects Congress' intent for Customs to initiate EAPA investigations quickly within 15 days of receiving an allegation." *See id.* at *20 (*emphasis added*).

Although Trek Metals did not raise this argument at the administrative level, this claim involves a pure question of law and thus the "pure legal question" exception to the exhaustion requirement applies. The Court in *Superior Commercial* considered the plaintiff's claim

regarding the 15-day statutory deadline under the pure question of law exception, even though the plaintiff did not raise the claim in the administrative proceeding or in the complaint and only raised it for the first time in its opening brief. *See Superior Commercial*, 2025 Ct. Intl. Trade LEXIS at *11-*13; *see also Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013) (stating that the pure question of law exception may apply when a party raises an issue "that can be addressed without further factual development or further agency exercise of discretion").

> The EAPA statute imposes a 15-day initiation deadline as follows:
>
> Not later than 15 business days after receiving an allegation described in paragraph (2) or a referral described in paragraph (3), the Commissioner shall initiate an investigation if the Commissioner determines that the information provided in the allegation or the referral, as the case may be, reasonably suggests that covered merchandise has been entered into the customs territory of the United States through evasion.

19 U.S.C. § 1517(b)(1). In other words, TRLED is required by statute to initiate an EAPA investigation within 15 business days after it receives an allegation. *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020) ("The first sign that the statute imposed an obligation is its mandatory language: 'shall.'"). However, TRLED's regulations define "date of receipt" of an allegation as "the date on which CBP provides an acknowledgment of receipt of an allegation containing all the information and certifications required {by regulation}." 19 C.F.R. § 165.12. This Court noted in *Superior Commercial* that "{i}n theory, Customs' expansive interpretation {of date of receipt} with no restrictions would allow Customs to take a long time, for example, 12 months, to deem an allegation 'received,' and then Customs could initiate an investigation 12 months plus 15 days later. This result would be inconsistent with

13

Congress' intention that Customs should act quickly to bring EAPA investigations within 15 days." *Superior Commercial*, 2025 Ct. Intl. Trade LEXIS 153, at *18-19.

According to the *TRLED Determination*, the EAPA allegation against Trek Metals was filed on January 18, 2024, and CBP acknowledged receipt on **February 1, 2024**. *See TRLED Determination* (C.R. 374) at 2, fn. 2 and 3. However, in the *Notice of Initiation of Investigation and Interim Measures*, CBP reported that the date of the official receipt of the allegation against Trek Metals (and the other importers) was **November 9, 2023**. *See Interim Measures* (C.R. 33) at 2, fn 4 (citing to "Email from CBP, "EAPA 7898 – Official Receipt of Properly Filed Allegation," dated November 9, 2023"). The significant discrepancy in these receipt dates – November 9, 2023 versus February 1, 2024 – raises further questions about the manner in which CBP conducted this investigation.

CBP initiated its investigation of Trek Metals on February 23, 2024. *See Interim Measures* (C.R. 33) at 27. Thus, CBP violated its statutory mandate by initiating its investigation later than 15 business days after receiving an allegation against Trek Metals – or perhaps more than two months after the statutory deadline (*i.e*., the time between November 9, 2023 – February 23, 2024).

As this Court held in *Superior Commercial*, CBP's regulation, 19 C.F.R. § 165.12, is not in accordance with law because it "allows Customs to extend and alter Congress' 15-day statutory deadline for an unlimited period of time, which is inconsistent with 19 U.S.C. § 1517(b)." *Superior Commercial Sols., LLC v. United States*, No. 24-00052, 2025 Ct. Intl. Trade LEXIS 153, at *20 (Ct. Int'l Trade Nov. 26, 2025).

### B.    CBP's Regulation 19 C.F.R. § 165.15 (d)(1) Is Arbitrary, Capricious, and Not in Accordance with Law

Trek Metals filed an amended complaint on December 15, 2025 to also add this count to its initial complaint in light of the Court's recent decision in *Superior Commercial Sols., LLC v.*

14

*United States*, Slip Op. 25-147, 2025 Ct. Intl. Trade LEXIS 153 (2025). Specifically, this Court held that "the regulation at 19 C.F.R. § 165.15(d)(1) is arbitrary, capricious, and not in accordance with law because the regulation does not provide an importer participating in an administrative proceeding with a procedural due process right to notice and a meaningful opportunity to be heard". *Superior Commercial*, 2025 Ct. Intl. Trade LEXIS 153, at *29.

> CBP's regulation 19 C.F.R. § 165.15(d)(1) provides that:
>
> CBP will issue a notice of its decision to initiate an investigation to all parties to the investigation no later than five business days after day 90 of the investigation, and the actual date of initiation of the investigation will be specified therein. In cases where interim measures are taken pursuant to § 165.24, notice to all parties to the investigation will occur no later than five business days after day 90 of the investigation.

CBP's regulation, 19 C.F.R. § 165.15(d)(1), is arbitrary, capricious, and not in accordance with law because "{the regulation} by definition does not allow for a party under investigation to submit any evidence or offer any administrative arguments in its defense prior to when the temporary deprivation takes effect {through interim measures} as described by the Supreme Court in Brock . . . ." *Superior Commercial*, 2025 Ct. Intl. Trade LEXIS 153, at *28-29.

The U.S. Court of Appeals for the Federal Circuit has repeatedly recognized that importers are entitled to procedural due process rights under the Fifth Amendment in EAPA investigations. *See, e.g., Royal Brush Mfg. v. United States*, 75 F.4th 1250, 1257 (Fed. Cir. 2023); *NEC Corp. v. United States*, 151 F.3d 1361, 1370-71 (Fed. Cir. 1998). The Fifth Amendment to the Constitution "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

"The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). "{T}he constitutional requirement of a meaningful opportunity to respond before a temporary deprivation may take effect entails, at a

15

minimum, the right to be informed not only of the nature of the charges but also of the substance of the relevant supporting evidence." *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 264-65 (1987).

It is a bedrock principle that "the fundamental requirement of due process is the opportunity to be heard `at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)); *see also Royal Brush Mfg., Inc. v. United States,* 45 CIT __, 483 F. Supp. 3d 1294, 1305 (2020) ("an importer participating in an administrative proceeding has a procedural due process right to `notice and meaningful opportunity to be heard') (quoting *PSC VSMPO-Avisma Corp. v. United States,* 688 F.3d 751, 761-62 (Fed. Cir. 2021).

"A party is entitled ... to know the issues on which decision will turn and to be apprised of the factual material on which the agency relies for decision so that he may rebut it. Indeed, the Due Process Clause forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281, 288 n.4 (1974). The Federal Circuit has explained as follows:

> {T}he courts have recognized that one "relatively immutable" principle of due process is that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.

*Ramirez v. Dep't of Homeland Sec.,* 975 F.3d 1342, 1350 (Fed. Cir. 2020) (collecting cases).

CBP violated Trek Metals' due process rights protected under the Fifth Amendment by imposing interim measures in accordance with 19 C.F.R. § 165.15(d)(1) without providing Trek Metals an opportunity to submit factual information or written arguments.

16

**V.**     **THE RECORD CONTAINS NO EVIDENCE THAT CHINESE MOTHER PIPE WAS USED TO PRODUCE OCTG FOR TREK METALS, AND PIPE PRODUCED IN THAILAND FROM BILLET IS NOT COVERED MERCHANDISE**

The EAPA statute states that "with respect to covered merchandise, the Commissioner shall make a determination, based on substantial evidence, with respect to whether such covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(c)(1)(A). "Covered merchandise" refers to merchandise that is subject to an antidumping or countervailing duty order. 19 U.S.C. § 1517(a)(3). "Evasion" means the following:

> {E}ntering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

*Id. §* 1517(a)(5)(A).  Thus, a finding of evasion requires CBP to prove three elements: "(1) entering **covered merchandise** into the United States; (2) by means of any document or data or information, written or oral statement, or act that is material and false, or any omission that is material; and (3) that results in any applicable cash deposit or other security being reduced or not applied to the merchandise." *Diamond Tools Tech. LLC v. United States,* 45 CIT at __, 545 F. Supp. 3d 1324, 1347 (2021).

In both the TRLED Determination and the Review Determination, CBP found that Chinese-origin mother pipe (hollow pipe) purchased by TOP and further processed in Thailand was "covered merchandise".  *TRLED Determination* (C.R. at 374) at 7-8; *Review Determination* (C.R. 395) at 23.  However, CBP acknowledged that OCTG produced by TOP from solid billet was not "covered merchandise".  *TRLED Determination* (C.R. 374) at 43 (CBP acknowledging that TOP may have had some OCTG production that "**uses { } billet in Thailand and qualifies as Thai-origin OCTG**"); *Review Determination* (C.R. 395) at 24 (the burden is on Trek Metals

17

to provide tracing documentation to show that "their entries do not contain subject merchandise because they were made from { } billet"). Thus, given that TOP only supplied <u>Thai-origin OCTG made from billet</u> to Trek Metals, then the first element of proof for a finding of evasion by Trek Metals – the entry of "covered merchandise" – is not met.

The record confirms that TOP used two input materials for its production of OCTG in Thailand: (1) Chinese "mother pipe" (*i.e.*, "hollow pipe") and (2) billet (*i.e.*, solid, semi-finished, cylindrical pieces of steel). During the on-site verification, TOP provided CBP with requested documentation showing that some of its shipments of OCTG to the United States had been produced from Chinese "mother pipe". However, when CBP asked for similar documentation specifically regarding shipments to Trek Metals, TOP informed CBP that all of the OCTG purchased by Trek Metals was **<u>produced only from billets, not from mother pipe</u> <u>(hollow pipe)</u>**:

> We requested additional transactions that involve Energy Pipe and Trek Metals purchasing OCTG that began production from mother pipe from China. TOP provided a list of invoices and associated bills of lading for purchases from Energy Pipe and Trek Metals and stated that **these two importers only purchased products produced from { } billets.**

*Verification Report* (C.R. at 352) at 26 (**emphasis added**).

During verification, TOP demonstrated that it produced OCTG from steel billet at its facility in Thailand. *Verification Report* (C.R. at 352) at 22. CBP observed TOP producing OCTG from **billet**, and the verification report details each step of TOP's production process. *Verification Report* (C.R. at 352) at 21-24. CBP also took photographs at each step of the production process, confirming TOP's manufacturing capabilities to produce OCTG from **billet**. *See Verification Report* (C.R. 352) at Attachment VII (on-site photographs at TOP). CBP also confirmed during verification that TOP's employees were "actively participating in various

18

production processes", that the workers operating machinery who were interviewed "were able to demonstrate their knowledge of the machinery and showed example records that were produced from their test", and that "the factory was covered in steel debris and dust, which is indicative of a factory that operates regularly." *Verification Report* (C.R. 352) at 22-23. CBP also observed testing being conducted on the OCTG produced during the factory tour in Thailand – again confirming TOP's capabilities to produce OCTG from billet. *See Verification Report* (C.R. 352) at 24.

Thus, the record evidence demonstrates that TOP was capable of producing and did produce OCTG in Thailand from billet. Moreover, TOP freely acknowledged and offered documentation as requested to show that it produced most of its OCTG from mother pipe from China. However, with respect to Trek Metals – an importer with only 5 entries of OCTG from Thailand – TOP was unable to provide any documentation showing OCTG production from mother pipe when CBP asked about transactions involving Trek Metals. Instead, TOP explained that no such documentation existed – because the OCTG purchased by Trek Metals was produced by TOP from billet only, not from mother pipe (hollow pipe).

Accordingly, CBP's conclusion in the *Review Determination* that "the finished OCTG **that contained Chinese 'mother pipe,'** which { } Trek Metals imported into the United States are 'covered merchandise'" is not supported by substantial evidence. *Review Determination* (C.R. 395) at 23. The record contains no evidence or any indication that Trek Metals imported OCTG that was produced by TOP from Chinese "mother pipe" – which was the only "covered merchandise" found by CBP in its investigation. There can be no lawful finding of evasion if Trek Metals' entries did not contain "covered merchandise." Thus, CBP's evasion determination with

19

respect to Trek Metals was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

## VI.    THE EVASION DETERMINATION AGAINST TREK METALS IS BASED ENTIRELY ON ADVERSE INFERENCES RATHER THAN RECORD EVIDENCE

The substantial evidence standard of review requires review of the administrative record as a whole, including that which fairly detracts from its weight. *Nippon Steel Corp. v. United States,* 458 F.3d 1345, 1351 (Fed. Cir. 2006). "Substantial evidence is more than a scintilla and must do more than create a suspicion of the existence of the fact to be established." *Id.* (cleaned up and quoting *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939)).

However, in its investigation of OCTG from Thailand, CBP failed to base its evasion determination regarding Trek Metals on substantial evidence. Instead, the *TRLED Determination* relied solely on an adverse inference that was contrary to the record facts in order to reach the unsupportable conclusion that the OCTG imported by Trek Metals was produced in Thailand by TOP from "mother pipe" and not billet.

In its evasion determination, CBP first applied adverse inferences against several importers, listing the companies which CBP found had not fully cooperated in the investigation or complied to the best of their ability with CBP's requests for information. *See TRLED Determination* (C.R. 374) at 35. Trek Metals was not on the list. In fact, at no point in the investigation did CBP ever assert that Trek Metals failed to cooperate or comply with all of CBP's requests to the best of its ability. Rather, CBP found that Trek Metals was fully cooperative, submitting complete responses with voluminous documentary support by the deadlines set by CBP. *See, e.g., Review Determination* (C.R. 395) at 4 ("only Trek Metals provided all of the requested information" in response to CBP's CF28 Request for Information). Trek Metals even provided comprehensive "tracing documentation" for each of its entries to

20

prove that TOP used **only billet** – not "mother pipe" – to produce the OCTG that Trek Metals imported from Thailand. Despite Trek Metals' full cooperation, CBP nevertheless applied adverse inferences regarding TOP in a manner which resulted in an evasion determination against Trek Metals. Thus, although CBP never found that adverse inferences were warranted with respect to Trek Metals, it nevertheless applied the functional equivalent to Trek Metals by making an evasion finding based on the application of adverse inferences to TOP.

The *Review Determination* compounded CBP's error by claiming that its finding of evasion was based on the record and not on any adverse inferences. CBP stated that "the use of adverse inferences is unnecessary to find substantial evidence of evasion in this case, and RR relies herein solely on the record and not on adverse inferences." *Review Determination* (C.R. 395) at 27. However, CBP continued to apply TRLED's adverse inference that "all of the OCTG that { TOP } exported into the United States during the POI was Chinese-origin OCTG." *TRLED Determination* (C.R. 374) at 43. Like the *TRLED Determination*, the *Review Determination* relied on adverse inferences regarding TOP to conclude that Trek Metals had evaded duties on Chinese OCTG, despite the record evidence which demonstrated that the OCTG Trek Metals purchased from TOP was produced only from billet and, therefore, was not covered merchandise.

Accordingly, CBP's statement in its *Review Determination* that its final evasion determination relied "solely on the record and not on adverse inferences" is not supported by substantial evidence and was, therefore, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

21

**VII.    TREK METALS HAD ONLY 5 ENTRIES OF OCTG FROM THAILAND, YET CBP CLAIMS IT HAD NO OBLIGATION TO REVIEW THEM**

The record in this EAPA investigation contains extensive documentation from Trek Metals and from TOP showing that TOP used billet – not "mother pipe" from China – to produce the OCTG that Trek Metals imported.  The record also shows that Trek Metals had only five entries of OCTG from TOP during the period of investigation. Yet, CBP claimed that it was not required to review each of Trek Metals' five entries to determine whether Trek Metals imported "covered merchandise" (*i.e.*, OCTG produced from Chinese "mother pipe").  This conclusion is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

When CBP announced its interim measures and issued an RFI to Trek Metals, CBP identified the entries for which Trek Metals was required to provide full document packages, including entry documentation; sales, ordering and production documents; and payment and receipt documentation.  *See TREK RFI Response* (C.R. 218) at Appendix I – Entries. Although Trek Metals had only five entries of OCTG from Thailand during the POI, CBP identified a total of 11 entries in Appendix I for Trek Metals. *See TREK RFI Response* (C.R. 208-217 and 177-203).  Thus, Trek Metals supplied document packages for entries from four other countries – in addition to the detailed document packages for the 5 entries from Thailand.  If CBP had sufficient time and resources to review documentation for these third-country entries – all of which were entirely unrelated to the EAPA investigation of OCTG from Thailand – then CBP should not be permitted to disclaim any obligation to review each of Trek Metals' five entries from Thailand to determine whether Trek Metals imported "covered merchandise" (*i.e.*, OCTG produced by TOP from Chinese "mother pipe").

When CBP issued its interim measures, it announced that it was consolidating EAPA investigations 7890-7898 and 7954 into one investigation. *Interim Measures* (C.R. 33) at 27.

22

Pursuant to 19 C.F.R § 165.13(b), CBP may consolidate multiple allegations if they involve: (1) relationships between the importers; (2) similarity of covered merchandise; (3) similarity of AD/CVD orders; and (4) overlap in time periods of entries of covered merchandise. Based on the similarity of merchandise and AD/CVD orders and the overlap in time periods, CBP consolidated the allegation against Trek Metals with the allegations against the other nine importers into Consolidated EAPA Case 7890. *Interim Measures* (C.R. 33) at 27. Trek Metals does not dispute that CBP may, at its discretion, consolidate multiple allegations into a single investigation if certain factors exist.  However, consolidation should be a mechanism to allow CBP to more efficiently conduct similar investigations; it should not be used as a short cut or limitation on the investigation that otherwise would have occurred in the absence of consolidation. In other words, if in an unconsolidated investigation, CBP would have reviewed all five of Trek Metals' entries, the mere fact of consolidation should not prevent CBP's review of Trek Metals' five entries. Trek Metals submits that if CBP had separately investigated Trek Metals in an unconsolidated EAPA investigation, CBP would have reviewed all five of its entries. It should have done so here.

## VIII.    CONCLUSION

For all of the above reasons, Consolidated Plaintiff Trek Metals Inc. respectfully requests that the Court:

1) Enter judgment in favor of Trek Metals;

2) Hold and declare that CBP imposed interim measures without providing Trek Metals with an opportunity to submit factual information or written arguments thereby violating Trek Metals' procedural due process rights of notice and a meaningful opportunity to be heard;

23

3) Hold and declare that CBP's conclusion that the OCTG imported by Trek Metals from TOP was made from Chinese mother pipe is unsupported by substantial evidence and was, therefore, arbitrary and capricious;

4) Hold and declare that CBP's statement that its final evasion determination relied "solely on the record and not on adverse inferences" is not supported by substantial evidence and was, therefore, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

5) Remand CBP's determinations with instructions to reconsider its finding of evasion in a manner that is in accordance with law and is no longer arbitrary and capricious;

6) Grant Trek Metals such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Frederick P. Waite
Frederick P. Waite
Kimberly R. Young
Vorys Sater Seymour and Pease LLP
1909 K Street, NW, Suite 900
Washington, D.C.   20006
(202) 467-8852

*Counsel to*
*Consolidated Plaintiff Trek Metals Inc.*

April 10, 2026

24

**<u>Certification of Compliance with the March 2, 2026 Scheduling Order</u>**

The undersigned hereby certifies that the foregoing brief contains 7,188 words, exclusive of the table of contents and table of authorities and therefore complies with the maximum word count limitation of 14,000 words for primary briefs set forth in the Court's Scheduling Order, dated March 2, 2026.

<u>/s/ Frederick P. Waite</u>
Frederick P. Waite
Kimberly R. Young
Vorys Sater Seymour and Pease LLP
1909 K Street, NW, Suite 900
Washington, D.C.   20006
(202) 467-8852


*Counsel to*
*Consolidated Plaintiff Trek Metals Inc.*

### CERTIFICATE OF SERVICE

Pursuant to U.S. Court of International Trade Rule 5(b)(2)(E), I hereby certify that on April 10,

2026, copies of Consolidated Plaintiff Trek Metals' *Motion for Judgment on the Agency Record*

*and Memorandum in Support* were served via the Court's CM/ECF system on the following parties:

Margaret J. Jantzen
U.S. Department of Justice
Commercial Litigation Branch-Civil
1100 L Street, NW
Washington, DC 20530

U.S. OCTG Manufacturers Association
 c/o Nicholas J. Birch
 Schagrin Associates
 900 Seventh Street, NW, Suite 500
 Washington, DC 20001

Centric Pipe, LLC
 c/o Bryan P. Cenko
 Mowry & Grimson, PLLC
 5335 Wisconsin Ave NW Ste810
 Washington, DC 20015

 Energy Pipe & Equip Rental LLC
 c/o Lydia C. Pardini
 Polsinelli PC
 1401 Eye Street, NW Suite 800
 Washington, DC 20005

 Kana Energy Services, Inc.
 c/o John M. Gurley
 ArentFox Schiff LLP
 1717 K Street, NW
 Washington, DC 20006

LE Commodities LLC
c/o Erik D. Smithweiss
Grunfeld Desiderio Lebowitz
Silverman & Klestadt LLP
707 Wilshire Boulevard, Ste 4150
Los Angeles, CA 90017-3720

/s/ Kimberly R. Young
Kimberly R. Young