**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE**

CENTRIC PIPE LLC,

*Plaintiff*,

LE COMMODITIES, LLC, TREK METALS, INC., ENERGEY PIPE & EQUIPMENT RENTALS, LLC, and KANA ENERGY SERVICES, INC.,

*Consolidated-Plaintiffs,*

v.

UNITED STATES,

*Defendant*,

and

U.S. OCTG MANUFACTURERS ASSOCIATION,

*Defendant-Intervenor*.

Consol. Court No. 25-00182

**CONSOLIDATED PLAINTIFF LE COMMODITIES, LLC'S REPLY BRIEF**

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP

Erik D. Smithweiss
Jordan C. Kahn*

707 Wilshire Boulevard
Suite 4150
Los Angeles, CA 90017-3720
(213) 452-0863
**
*1201 New York Ave., NW Ste 430
Washington, DC 20005
(202) 783-6881
*Counsel for Consolidated Plaintiff LE Commodities, LLC*

Dated: November 25, 2026

## TABLE OF CONTENTS

INTRODUCTION .......... 1

I. CBP UNLAWFULLY DETERMINED THAT PET'S OCTG IS WITHIN THE SCOPE OF THE AD/CVD ORDERS .......... 2

A. LE Exhausted Its Administrative Remedies .......... 2

B. CBP Improperly Made The Substantive Determination That PET's OCTG Was Covered Merchandise, When Commerce Could Not Make That Finding .......... 5

C. CBP Was Required To Issue a Covered Merchandise Referral .......... 10

D. LE Did Not Undertake Any Materially False Act or Omission When Entering OCTG from PET Without AD/CVD .......... 12

II. CBP VIOLATED LE'S DUE PROCESS RIGHTS .......... 12

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Cases**

*Acme Furniture Indus., Inc. v. United States*, 36 CIT 1025 (2012) .... 6

*All One God Faith Inc. v. United States*, 589 F.3d 1238 (CIT 2022) .... 10

*Bell Supply Co., LLC v. United States*, 393 F. Supp. 1229 (CIT 2019) .... 3, 4, 5, 9

*Bell Supply Co., LLC v. United States,* 888 F.3d 1222 (Fed. Cir. 2018) .... 5, 6, 7

*Blue Pipe Steel Ctr. Co. v. United States*, 803 F. Supp. 3d 1258 (CIT 2025) .... 9

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) .... 13

*Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324 (CIT 2021) .... 12

*McCarthy v. Madigan,* 503 U.S. 140 (1992) .... 3

*Mid Continent Nail Corp. v. United States*, 725 F.3d 1295 (Fed. Cir. 2013) .... 13

*Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973 (Fed. Cir. 1994) .... 6

*Stein Indus. Inc. v. United States*, 365 F. Supp. 3d 1364 (CIT 2019) .... 8

*Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020) .... 8, 9, 11

*Superior Commercial Solutions, LLC v. United States*, 811 F. Supp. 3d 1363 (CIT 2025) .... 2, 13, 14, 16

*Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487 (Fed. Cir. 2020) .... 13, 14

*U.K. Carbon and Graphite Co. v. United States*, 931 F. Supp. 2d 1322 (CIT 2013) .... 7

*Vanguard Trading Co. v. United States*, 788 F. Supp. 3d 1277 (CIT 2025) .... 10

**Statutes**

19 U.S.C. § 1517 .... 1, 5, 6, 8

**Administrative Decisions**

*Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 75 Fed. Reg. 3,203 (Jan. 20, 2010) .... 5, 12

*Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 75 Fed. Reg. 28,551 (May 21, 2010) .......... 5, 13

*Oil Country Tubular Goods From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping and Countervailing Duty Orders*, 89 Fed. Reg. 102,864 (Dec. 18, 2024) .......... 4

*Oil Country Tubular Goods from the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 Fed. Reg. 9311 (Feb. 27, 2026).......... passim

## INTRODUCTION

Consolidated Plaintiff LE Commodities, LLC ("LE") replies to the Response Briefs filed by Defendant United States on August 25, 2026, ECF 67-68 ("Def. Br."), and by Defendant-Intervenor OCTG Manufacturing Association on September 21, 2026, ECF 69-70 ("D-I Br.") in opposition to LE's Corrected Motion for Judgement Upon the Agency Record filed on April 13, 2026, ECF 57-58 ("LE Br."). In its Opening Brief, LE established that U.S. Customs and Border Protection ("CBP") committed legal errors by finding that LE had committed duty evasion in the underlying administrative Enforce and Protect Act ("EAPA") Consolidated Case Number 7890: (1) Trade Remedy & Law Enforcement Directorate ("TRLED") Notice of Determination as to Evasion (Feb. 24, 2025), CR 374, PR 522 ("TRLED Determination"), issued under 19 U.S.C. § 1517(f), including its initial determination issued under 19 U.S.C. § 1517(c)); and (2) CBP's subsequent affirmation of the TRLED Determination, issued by CBP's Office of Trade, Regulations & Rulings ("RR"). Final Administrative Determination (July 2, 2025), CR 395, PR 612 ("Administrative Review Determination").[1] LE in particular demonstrated that:

1. CBP improperly found that LE's imports of OCTG from Thailand manufactured by Petroleum Equipment (Thailand) Co., Ltd. ("PET") using hollow steel billets from the People's Republic of China ("China") were subject to the antidumping duty and countervailing duty ("AD/CVD") Orders on Oil Country Tubular Goods ("OCTG") from China, since that decision arbitrarily misread the scope language – as the U.S. Department of Commerce ("Commerce") subsequently confirmed upon finding that no such scope determination could be made without further analysis. LE Br. at 22-33; and

2. CBP violated LE's due process rights by imposing AD/CVD on the entries of PET's OCTG from Thailand using hollow steel billets from China since February 1, 2023 – <u>over one year before the EAPA investigation</u> commenced on February 23, 2024, <u>and 14 months before notice was first provided</u> on May 31, 2024. LE Br. at 33-36; Administrative Review Determination at 3-5. This Court recently recognized the due process impropriety with this chronology in

[1] LE continues to endorse arguments advanced by Plaintiff Centric Pipe LLC. LE Br. at 21.

> *Superior Commercial Solutions, LLC v. United States*, 811 F. Supp. 3d 1363 (CIT 2025). LE Br. at 33-36.

This demonstrated legal error is not undermined by the Response Briefs of Defendant or Defendant-Intervenor, for the reasons set forth below.

## I. CBP UNLAWFULLY DETERMINED THAT PET'S OCTG IS WITHIN THE SCOPE OF THE AD/CVD ORDERS

As set forth below: (a) LE exhausted its administrative remedies; (b) CBP improperly made the substantive determination that PET's OCTG was subject to AD/CVD based on its erroneous scope interpretation that OCTG from Chinese hollow steel billet was subject merchandise – a position not shared by Commerce; (c) CBP was required to issue a covered merchandise referral to Commerce; and (d) LE did not make any materially false statements or omissions by entering PET's OCTG as product of Thailand.

### A. LE Exhausted Its Administrative Remedies

Defendant-Intervenor alleges that LE failed to exhaust its administrative remedies, advancing a technical defense to merits consideration not shared by Defendant. *Compare* D-I Br. at 52-53 *with* Def. Br. at 1-48. Defendant-Intervenor emphasizes LE's reliance before this Court on precedent in which "Chinese 'green tube' . . . was affirmed to be within the scope in the *Bell Supply* cases," whereas before CBP "LE Commodities' *only* mention of Bell Supply and of 'green tube' . . . was in a footnote to its written argument and in its request for review." Def-Int. Br at 52 (emphasis in original). According to Defendant-Intervenor, this footnote relegation should preclude merits consideration because "passing reference to an argument in a footnote . . . is insufficient." *Id*. Yet Defendant-Intervenor improperly conflates an entire argument with supporting precedent. LE in fact devoted several pages to briefing its argument that CBP improperly found the OCTG imported by LE to constitute subject merchandise under the plain language of the AD/CVD order scope administered by Commerce. LE Resubmission of Written

Argument (Dec. 26, 2025), CR 363, PR 492, at 1-3.

Defendant-Intervenor cites no authority for the proposition that a party cannot rely on precedent on appeal when that case was cited below only in a footnote. To the contrary, the purpose of the exhaustion requirement is to put the agency on notice as to arguments that can be addressed in the first instance. *See McCarthy v. Madigan,* 503 U.S. 140, 145 (1992). Here, CBP clearly understood LE's scope argument with which it squarely disagreed – citing *Bell Supply*:

> LE Commodities asserts that the OCTG it imported are "not covered merchandise . . . ." LE Commodities further argues that Commerce has never specifically found the inputs of solid or hollow steel billets to be in-scope merchandise, citing to *Bell Supply Co., LLC v. United States*, 393 F. Supp. 1229 (Ct. Int'l Trade 2019)). . . .
>
> The scope language of the AD/CVD Orders clearly defines OCTG as "hollow steel products of circular cross-section," corresponding to PET's description of "hollow steel billets".

Administrative Review Determination at 3-4, 11, 19; *see* TRLED Determination at 22-24, 50 ("LE Commodities . . . contend{s} that Commerce has not held that OCTG goods produced from hollow steel billets in China are within the scope; therefore, the OCTG they imported was Thai-origin. CBP disagrees and notes that such a contention is without merit.").

Moreover, *Bell Supply* became more prominent to LE's argument after conclusion of the EAPA investigation, when Commerce in its circumvention inquiry expressly rejected Defendant-Intervenors' view that PET's OCTG made from Chinese hollow steel billet was in-scope:

> the domestic interested parties note that in *Bell Supply*, Commerce determined that "steel tubular form of the unfinished OCTG {or 'green tube'} remains a steel tubular form, of the same size and shape, after the completion of the downstream production process," . . . . The **domestic interested parties maintain that the hollow steel billets used by PET in this case are comparable to the green tube analyzed in *Bell Supply***. . . .
>
> In this regard, **Commerce disagrees with the domestic interested parties**, in part. . . . {T}here is **no evidence on the record that the scope of the *Orders* specifically includes OCTG produced in third countries from hollow billets**

> **from China**. We also note that no party requested a scope determination for hollow steel billets further processed into OCTG.

*Oil Country Tubular Goods from the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 Fed. Reg. 9311 (Feb. 27, 2026) ("*Circumvention Determination*"), accompanying Issues and Decision Memorandum ("IDM"), Comment 1 (emphases added).

Commerce preliminarily found PET's OCTG manufactured in Thailand using both solid and hollow steel billet from China to be circumventing, prompting domestic parties to zealously yet unsuccessfully argue that the latter were already in-scope such that they should not be part of the circumvention analysis. *Circumvention Determination*, 91 Fed. Reg. 9311, IDM Comment 1. Notably, the inquiry resulting in the *Circumvention Determination* initiated on December 14, 2024, in response to a request by the domestic OCTG industry, and did not involve Commerce finding retroactive AD/CVD applicable before that date. *Oil Country Tubular Goods From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping and Countervailing Duty Orders*, 89 Fed. Reg. 102,864 (Dec. 18, 2024); *Circumvention Determination*, 91 Fed. Reg. 9311-9315.

Having failed to persuade Commerce that PET's OCTG was covered by the scope per *Bell Supply*, Defendant-Intervenor now advances a meritless position to prevent this Court from considering that precedent. *See* D-I Br. at 52-53. Yet CBP was clearly presented with that precedent and especially the issue to which it pertains – that PET's OCTG was not within scope. Administrative Review Determination at 3-4, 11, 19. Accordingly, this Court can and should consider not only *Bell Supply*, but especially Commerce's express clarification that its holding for green tube does not extend to PET's OCTG manufactured in Thailand using hollow steel

billet from China. LE Br. at 13-19, 22-28 (citing *Circumvention Determination*, 91 Fed. Reg. 9311, IDM, Comment 1; *Bell Supply*, 393 F. Supp. at 1233; *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228-31 (Fed. Cir. 2018)).

### B. CBP Improperly Made The Substantive Determination That PET's OCTG Was Covered Merchandise, When Commerce Could Not Make That Finding

CBP found that PET's OCTG was "covered merchandise" that is defined by statute as being "subject to—an {AD} order . . . or . . . a {CVD} order." 19 U.S.C. § 1517(a)(3). As posited by CBP:

> the question is whether the merchandise is covered by the AD/CVD Orders, *as described by Commerce*. Here, the plain language of the AD/CVD Orders clearly states that hollow steel products of circular cross-section, whether finished or unfinished, are covered, and remain covered, where the merchandise is subsequently finished in a third country such as Thailand.
>
> Therefore, RR concludes that there is substantial evidence that the "hollow steel billets" from China that PET used to manufacture finished OCTG in Thailand are covered by the scope of the AD/CVD Orders.

Administrative Review Determination at 20 (emphasis in original).[2] As already identified, LE Br. at 22-26, this interpretation is legally flawed:

- The scope first and foremost requires that subject merchandise be OCTG, whether finished or unfinished, rather than covering all hollow steel products of circular cross-section: "**The scope of this order consists of certain oil country tubular goods**, which are hollow steel products of circular cross-section . . . ." *Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 75 Fed. Reg. 3203, 3205 (Jan. 20, 2010); *Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 75 Fed. Reg. 28,551, 28,553 (May 21, 2010) ("AD/CVD Orders") (emphasis added).

- Commerce itself rendered the contrary opinion: "**we cannot determine that hollow billets further processed into OCTG in a third country are within the**

[2] This is the CBP finding that LE alleges is unsupported by substantial evidence, in response to Defendant's confusion. *See* Def. Br. at 43 ("It is unclear what 'finding' LE Commodities is referring to").

> **scope** of the *Orders* without doing a substantial transformation and country-of-origin analysis." *Circumvention Determination*, 91 Fed. Reg. 9311, IDM Comment 1 (emphasis added).

Defendant's overarching response is that in making its "covered merchandise determination . . . under 19 U.S.C. § 1517," "Customs does not make a substantive scope determination." Def. Br. at 38. Yet CBP finding that PET's OCTG is "subject to—an {AD} order" and "a {CVD} order" manifestly constitutes a substantive scope determination. 19 U.S.C. § 1517(a)(3). While as a general matter it may be that "CBP's determination is not controlled by nor does it depend upon or rely on Commerce's scope rulings," Def. Br. at 38, CBP cannot lawfully find a product covered by the scope's plain language when that incorrect reading is confirmed by Commerce making a contrary interpretation. CBP's role in the AD/CVD system has been described as "ministerial." *Acme Furniture Indus., Inc. v. United States*, 36 CIT 1025, 1029 (2012) (emphasis added) (citing *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994)). Indeed, CBP endeavors to support its interpretation that PET's OCTG is covered by emphasizing the plain scope language "*as described by Commerce*." Administrative Review Determination at 20 (emphasis in original). With Commerce by contrast requiring a substantial transformation and country of origin analysis to be conducted before finding PET's OCTG to be in-scope, CBP's contrary interpretation that all hollow steel billets from China are subject merchandise cannot be sustained.

Defendant draws a false equivalence between CBP and Commerce being able to make distinct substantial transformation analyses, with the former by CBP for country of origin entry purposes while the latter by Commerce for AD/CVD applicability purposes. Def. Br. at 40. The Federal Circuit so held in *Bell Supply*, affirming Commerce's finding that green tube from China had not been substantially transformed for AD/CVD purposes in its circumvention analysis –

despite CBP having found that the heat treatment for green tube in third countries substantially transformed those products under a different analysis with the same name. 888 F.3d at 1225-31. While Defendant is correct that CBP and Commerce here each rendered "determinations in imported merchandise pursuant to different Congressional authority," Def. Br. at 39, both agencies still contemplated the same substantive question of whether PET's OCTG is subject to AD/CVD under the same scope language. We submit that this common assessment cannot be characterized as being "for different purposes" because the product either is or is not subject merchandise. *See* Def. Br. at 39. EAPA should not permit CBP to make a substantive scope determination that contradicts Commerce's correct interpretation for the exact same product.

Nor is this Court precluded from considering Commerce's contrary interpretation, as Defendant suggests. *See* Def. Br. at 40. Defendant misplaces reliance on precedent from over a decade ago, long before the circumvention process was codified (and instead administered through the scope regulation). *Id*. (citing *U.K. Carbon and Graphite Co. v. United States*, 931 F. Supp. 2d 1322 (CIT 2013)). This Court in that circumvention appeal declined to consider Commerce's findings related to the scope. *U.K. Carbon and Graphite*, 931 F. Supp. 2d at 1328. This Court declining to consider Commerce's scope findings in that case does not warrant this Court ignoring a contrary scope interpretation rendered by Commerce when evaluating the legality of a CBP EAPA determination. This Court should consider Commerce's finding that PET's OCTG cannot be found subject by the plain language but instead requires a substantial transformation and country of origin analysis. *Circumvention Determination*, 91 Fed. Reg. 9311, IDM Comment 1. This Commerce recognition fatally undermines CBP's flawed, contradictory scope interpretation.

Defendant unpersuasively posits that CBP and Commerce can maintain conflicting scope interpretations given the different standards of review for CBP EAPA decisions and Commerce AD/CVD decisions. Def. Br. at 41. As an initial matter, CBP is required by statute to render EAPA decisions "based on substantial evidence." 19 U.S.C. § 1517(c)(1)(A). Moreover, CBP arbitrarily read the scope to include "hollow steel products of circular cross-section" instead of first assessing whether PET's OCTG was subject because the hollow steel billets from China constituted unfinished OCTG, Administrative Review Determination at 20, emphasizing that "**nothing on the record indicates that these hollow steel billets met any of the *AD/CVD Order*'s exclusions**." TRLED Determination at 20 (emphasis added). It is axiomatic that there must first be an affirmative finding that the imported product is covered by the description of the scope before "proceed{ing} to consider whether the scope contained exclusionary language." *Stein Indus. Inc. v. United States*, 365 F. Supp. 3d 1364, 1371-73 (CIT 2019). An assessment of whether products are subject merchandise may not first "incorrectly assume{} that . . . products met the description of subject merchandise." *Id.* at 1371. Indeed, there could never be a settled scope interpretation if the agencies render conflicting determinations. This Court should invalidate CBP's arbitrary finding that PET's OCTG constituted subject merchandise, which is not inconsistent with the contrary, correct interpretation articulated by Commerce – even if those agency actions are reviewed under different standards.

In terms of CBP interpreting the scope in a manner at odds with Commerce, Defendant-Intervenor claims that: "{t}he Federal Circuit has already answered that question." D-I Br. at 48-51 (citing *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1317 (Fed. Cir. 2020)). Defendant tellingly does not endorse this inapposite precedent that involves neither EAPA nor current Department regulations. *See* Def. Br. at v. In *Sunpreme*, CBP made an initial determination of

AD/CVD applicability that was subsequently confirmed by Commerce in a scope ruling. 946 F.3d at 1306-07. Commerce confirming CBP's initial AD/CVD assessment is inapposite to a situation such as here where Commerce subsequently contradicts CBP's scope interpretation. For *Sunpreme* to "answer{} the question" as Defendant-Intervenor asserts, D-I Br. at 48, Commerce there would have had to have subsequently disagreed with CBP's initial analysis and instead found the necessity for a substantial transformation and country of origin analysis. That is the opposite of what happened in *Sunpreme*. Defendant-Intervenor likewise misplaces reliance on recent precedent from this Court where CBP was affirmed for applying AD/CVD to the EAPA period instead of since Commerce subsequently ruled that the product was in-scope. D-I Br. at 51 (citing *Blue Pipe Steel Ctr. Co. v. United States*, 803 F. Supp. 3d 1258, 1263 (CIT 2025)). As with *Sunpreme*, Commerce in *Blue Pipe* subsequently confirmed CBP's scope interpretation.

There is no support for the proposition that CBP can lawfully interpret the scope of an AD/CVD order in a manner with which Commerce disagrees. Here, CBP arbitrarily misread the scope language as including all hollow steel products of circular cross-section without first assessing whether the product was OCTG, and in particular did not assess whether the hollow steel billets from China used by PET were unfinished OCTG that had not been substantially transformed in Thailand to remain subject to AD/CVD. If CBP were correct that the scope language makes all hollow steel products of circular cross-section subject, Commerce would have found PET's OCTG from Thailand subject merchandise on account of hollow steel billets from China being subject, akin to green tube that constituted unfinished OCTG. *Bell Supply*, 393 F. Supp. at 1233. Commerce's contrary finding confirmed that CBP erred by arbitrarily making this incorrect scope interpretation. *See Circumvention Determination*, 91 Fed. Reg. 9311, IDM Comment 1. CBP further erred by finding retroactive AD/CVD back to February 1, 2023, on a

product for which Commerce found prospectively subject commencing December 14, 2024. LE Br. at 32-33. Accordingly, this Court should order remand for CBP to reconsider its findings that cannot be reconciled with those of Commerce.

**C. CBP Was Required To Issue a Covered Merchandise Referral**

LE established that CBP was on this record required to issue a covered merchandise referral to Commerce. LE Br. at 31. According to Defendant, referral was unnecessary because: "{t}here is no indication that CBP was 'unable' to make this determination." Def. Br. at 39. Yet Commerce itself articulated that it was unable to make this determination without a substantial transformation and country of origin analysis. *Circumvention Determination*, 91 Fed. Reg. 9311, IDM Comment 1. Defendant advances a meritless slippery slope argument: "The statute does not require a referral to Commerce anytime an importer challenges a covered merchandise determination." D-I Br. at 39. LE is not arguing that any disagreement compels referral; rather, **referral is warranted here in this unique circumstance where CBP arbitrarily interpreted the scope in a manner expressly disputed by Commerce**. Defendant-Intervenor therefore misplaces reliance on this Court's precedent for the uncontroversial position that: "The statute does not place on Customs an obligation to refer the matter to Commerce whenever an interested party posits that merchandise subject to an EAPA investigation falls outside the scope of an existing AD or CVD order." D-I. Br. at 45 (quoting *Vanguard Trading Co. v. United States*, 788 F. Supp. 3d 1277, 1289 (CIT 2025)).

LE submits that, given the circumvention finding and plain scope language, "CBP was obligated to refer the matter to Commerce such that its failure to do so was an abuse of discretion." D-I Br. at 46 (quoting *All One God Faith Inc. v. United States*, 589 F.3d 1238, 1250 (CIT 2022)). Defendant-Intervenor seeks to minimize the compelling basis for referral by mischaracterizing LE's position as being that "Customs was required to refer the issue to

Commerce merely because Commerce would later address a related question . . . .” D-I Br. at 52. Commerce here did not merely address a related question, but rejected the plain language analysis used by CBP to find the exact same product to constitute subject merchandise. While referral may not be not warranted “whenever Commerce might conceivably reach the issue differently,” D-I Br. at 51, referral is required here where Commerce in fact made a contradictory finding for the same product.

Defendant-Intervenor unpersuasively heralds language from *Sunpreme* to support its view that CBP properly rendered a scope interpretation without referral. According to Defendant-Intervenor, requiring a common scope interpretation “would encourage gamesmanship by importers, by creating ‘perverse incentives for importers’ to attempt to block and delay Customs’ ability to apply AD/CVD duties by raising often unmeritorious scope questions before Commerce.” D-I Br. at 50 (quoting *Sunpreme*, 946 F.3d at 1318, 1321). Yet here no such gamesmanship occurred; rather, domestic OCTG producers sought a circumvention inquiry for PET’s OCTG made from Chinese steel billets, without specifying only solid steel billets – and then vigorously albeit unsuccessfully argued that Commerce should find that PET’s OCTG made from hollow steel billet to be in-scope. *Circumvention Determination*, 91 Fed. Reg. 9311, IDM Comment 1. The consequences warned of by Defendant-Intervenor have no applicability here where the domestic industry brought this issue. If Commerce’s scope interpretation has no relevance, as Defendant-Intervenor insists, then why was there such zealous domestic industry advocacy that Commerce align its scope interpretation with that of CBP? LE submits that this Commerce finding precludes affirming CBP’s scope interpretation.

### D. LE Did Not Undertake Any Materially False Act or Omission When Entering OCTG from PET Without AD/CVD

LE demonstrated that CBP violated the EAPA statute by finding LE liable for duty evasion because LE did not make any materially false statements or omissions by entering PET's OCTG as product of Thailand. LE Br. at 31-32 (citing *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1354-55 (CIT 2021)). In response, Defendant maintains that LE's "argument seeks to apply the importers' preferred interpretation of evasion —that non-culpable conduct (good faith) cannot be found to constitute evasion." Def. Br. at 37. In actuality, LE seeks to apply Commerce's correct interpretation of the scope – that OCTG made in Thailand using Chinese hollow steel billet cannot have the country of origin as China for AD/CVD purposes without a substantial transformation and country of origin analysis. *Circumvention Determination*, 91 Fed. Reg. 9311, IDM Comment 1. Before that analysis is undertaken by Commerce, LE properly entered PET's OCTG as nonsubject merchandise based on unrefuted documentation that Thailand was the correct country of origin. *See* LE Br. at 6, 34. Accordingly, CBP "has failed to demonstrate how, if at all, {LE's} actions constitute a material and false statement or act, or a material omission." *Diamond Tools*, 545 F. Supp. 3d at 1354-55.

## II. CBP VIOLATED LE'S DUE PROCESS RIGHTS

LE demonstrated that CBP violated LE's due process rights by imposing AD/CVD on the entries of PET's OCTG from Thailand using hollow steel billets from China since February 1, 2023 – over one year before the EAPA investigation commenced on February 23, 2024, and 14 months before notice was first provided on May 31, 2024. LE Br. at 33-36; Administrative Review Determination at 3-5. As a result, LE would now be liable for AD/CVD cash deposits of 112.55% on the OCTG that it imported from PET long before notice was provided. *Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Affirmative*

*Countervailing Duty Determination and Countervailing Duty Order*, 75 Fed. Reg. 3,203, 3203-04 (Jan. 20, 2010); *Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 75 Fed. Reg. 28,551, 28,552 (May 21, 2010).

The overarching response from Defendant and Defendant-Intervenor is that LE neglected to identify a protected property interest before entering PET's OCTG from Thailand that would subsequently be subject to 112.55% AD/CVD. Def. Br. at 26-28; D-I Br. at 23-25. Yet the Federal Circuit made no such inquiry when invalidating Commerce's imposition of AD/CVD for violating "the broader due-process principle that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties **fair warning** of the conduct {the order or regulation} prohibits or requires.'" *Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 495 (Fed. Cir. 2020) (emphasis added) (quoting *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300-01 (Fed. Cir. 2013); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012)). In *Tai-Ao*, the fact that entries were required to pay AD/CVD before fair warning was provided invalidated that agency action between the assessment of AD/CVD on March 21, 2016, and the first provision of notice nearly nine months later on November 14, 2026. *Id*. at 492-97. Because AD/CVD was unlawfully assessed before fair warning, the Federal Circuit did not contemplate the protected property interest – it went without saying that the AD/CVD assessment violated due process.

This Court recently followed suit by recognizing the due process violation resulting from the EAPA process that facilitates AD/CVD imposition long before notice. *Superior Commercial Solutions, LLC v. United States*, 811 F. Supp. 3d 1363 (CIT 2025). LE Br. at 33-36. While recognizing that other rulings of this Court have reached a contrary result, *see* Def. Br. at 27

(listing cases), *Superior Commercial Solutions* should be followed because, using language from that opinion: "It was only when the {112.55}% interim penalty was imposed that {LE} was made aware of the allegations. **{LE} was not provided with an opportunity to offer evidence and make administrative arguments prior to the imposition of {112.55}% interim penalties** on all unliquidated entries." 811 F. Supp. 3d at 1376-77 (CIT 2025) (emphasis added). Once CBP had reason to believe AD/CVD could potentially apply to PET's OCTG in February 2024, it had an obligation to provide LE with "**fair warning**" so that LE could make an informed decision to cease further importation and not incur substantial AD/CVD exposure. *Tai-Ao*, 983 F.3d at 495. It is anathema to due process and fair warning to entrap unknowing importers such as LE by letting them continue to import merchandise without providing notice of suspected AD/CVD. Such advance notice was all the more imperative given the record evidence that PET's OCTG was properly entered as country of origin Thailand, *see* LE Br. at 6, and that such OCTG made from Chinese hollow steel billets is not covered by the plain scope language – as confirmed by Commerce. Section I.B, *supra*.

LE urges this Court to follow *Superior Commercial Solutions* and rule that CBP violated its due process rights by failing to give LE fair notice that its imports of PET's OCTG would retroactively incur massive AD/CVD exposure. Defendant mischaracterizes the Court's decision in *Superior Commercial Solutions* as "non-final" Def. Br. at 9, because in fact judgment has entered. 811 F. Supp. 3d at 1381. LE submits that *Superior Commercial Solutions* will be affirmed on appeal, given its alignment with Federal Circuit precedent requiring "**fair warning**" before AD/CVD can be retroactively assessed. *Tai-Ao*, 983 F.3d at 495 (emphasis added). By contrast, the cases relied upon by Defendant – in which the EAPA system withstood

challenge – were not appealed with respect to whether EAPA's system of assessing AD/CVD long before notice is provided comports with due process. *See* Def. Br. at 27 (listing cases).

Defendant misplaces reliance on legislative history for the proposition that EAPA is designed to entrap importers: "Unscrupulous importers can quickly adjust their tactics when they receive notice they are under investigation or suspect they have been detected by Customs." Def. Br. at 29. Here, based on record evidence and scope language, LE properly entered PET's OCTG with Thailand as the country of origin and not subject to AD/CVD. Sections I.B, I.D, *supra*; *see* LE Br. at 6, 34. Under these circumstances, CBP violated due process by neglecting to advise LE of potential AD/CVD liability. Defendant argues that EAPA "ensure{s} that the government protects its revenue by preventing duty losses during investigations." Def. Br. at 29. Yet here CBP undertook a secret process to trap LE that improperly generated revenue through violating due process protections.

Defendant-Intervenor likewise misplaces reliance on the request for information ("RFI") issued by CBP to LE before notice of interim measures was provided. D-I Br. at 30-31. The RFI, however, did not provide fair warning of AD/CVD applicability. As an initial matter, that RFI issued in early March 2024, yet AD/CVD was retroactively extended back to February 1, 2023. TRLED Determination at 3 n.8, 4. Therefore, even if this RFI constituted fair warning, there was well over one year's worth of entries for which notice was not provided. Moreover, that RFI did not warn LE it was being investigated for AD/CVD and such notice should not be inferred given LE's understanding – shared by Commerce – that PET's OCTG was not covered by the scope. The CF-28 merely requested general information concerning the OCTG imported from PET. LE CF-28 Response (Apr. 10, 2024), CR 281, PR 260, Exhibit A. LE provided CBP with all requested information. *Id.* at 1-4, Exhibits B-K. Accordingly, the mere solicitation of general

information for PET's OCTG from Thailand imported by LE does not satisfy the due process guarantee through which LE had to be specifically advised of AD/CVD exposure. The RFI relied upon by Defendant-Intervenor – but tellingly not Defendant – therefore confirms the due process violation.

LE manifestly had a protected property interest arising from imposition of 112.55% AD/CVD. The EAPA procedures provided were insufficient given that there was no earlier opportunity to minimize that exposure. Accordingly, this Court should follow *Superior Commercial Solutions* and invalidate the AD/CVD liability. Defendant misstates that holding by asserting that the EAPA "procedures, combined with the availability of a refund for all monies paid with interest if CBP reaches a negative evasion determination, provide all the process that Superior is due." Def. Br. at 30. *Superior Commercial Solutions* in fact reached the opposite conclusion that the EAPA procedures violated due process rights by providing insufficient notice. 811 F. Supp. 3d at 1376-77. Likewise, the EAPA procedure violated due process here by creating a secret procedure with LE neither being advised as to AD/CVD liability nor having an ability to minimize such exposure.

## **CONCLUSION**

LE requests that this Court hold that CBP's TRLED Determination and Administrative Review Determination are unlawful and order remand with instructions for CBP to issue a new determination that is consistent with this Court's decision.

Respectfully submitted,

*/s/ Jordan C. Kahn*
Erik D. Smithweiss
Jordan C. Kahn*

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

707 Wilshire Boulevard, Ste. 4150
Los Angeles, CA 90017-3720
(213) 452-0863
**
*1201 New York Ave., NW, Ste 430
Washington, DC 20005
(202) 783-6881

*Counsel for Consolidated Plaintiff*
*LE Commodities, LLC*

Dated: November 25, 2026

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Consolidated Plaintiff LE Commodities, LLC's Reply Brief, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2007, is 5,015 words, less than the 7,000 word limit.

*/s/ Jordan C. Kahn*
Jordan C. Kahn

*Counsel for Consolidated Plaintiff*
*LE Commodities, LLC*

Dated: November 25, 2026

15427890_3